[No. D024039. Fourth Dist., Div. One. Oct. 27, 1995.]

SCIENCE APPLICATIONS INTERNATIONAL CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
DEPARTMENT OF GENERAL SERVICES, Real Party in Interest.

## COUNSEL

Gray, Cary, Ware & Freidenrich, Merrill F. Storms, Jr., Marcelle E. Mihaila and Nancy O. Dix for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, Donald R. Currier, Deputy Attorney General, Bergman & Wedner, Gregory M. Bergman, Robert M. Mason III and Kristi Sjoholm-Sierchio for Real Party in Interest.

## OPINION

**FROEHLICH, J.\***—We issued an opinion earlier in the year in this action affirming the judgment except for certain costs.[1] Specifically, we reversed the attorney fees in full, but remanded the items designated "litigation expenses" for redetermination suggesting that "most if not all" of them would be disallowed as ordinary costs. On remand, the trial court awarded the bulk of the original items, not as ordinary costs but as "litigation expenses."

We hold the prevailing party in this case is not entitled to litigation expenses which represent high-powered computer support akin to paralegal services or document retrieval. We have also determined the issue is properly resolved by writ.

---

\*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.

[1]*Science Applications Internat. Corp.* v. *State of California* (Jan. 18, 1995) D018433, nonpublished opinion.

FACTUAL AND PROCEDURAL BACKGROUND

Science Applications International Corporation (SAIC) filed suit against the State of California Department of General Services Office of Procurement (State) for terminating a contract with SAIC to develop a computer-aided dispatch system for the California Highway Patrol (CHP). The State in turn cross-complained. The jury found SAIC breached the contract and awarded over $1 million in damages to the State on its cross-complaint. The trial court gave the State another $150,052 in ordinary court costs,[2] $1.2 million in attorney fees and $727,833 for a number of items referred to as "litigation expenses"[3] after trial.

We affirmed the judgment on appeal but only in part. That is, we reversed the attorney fee award, rejecting the trial court's interpretation that paragraph 21 of the contract covered attorney fees incurred in defending a contract action between the State and its primary contractor. We further remanded the litigation expenses to the trial court to reconsider whether they were awarded under the authority of paragraph 21 (in which case they would be disallowed) or as costs otherwise allowable under Code of Civil Procedure[4] section 1033.5.

On remand, the trial court assessed $464,908 in litigation expenses including all the items originally awarded except expert fees ($328,000).[5] The order explained that the use of video graphics (i.e., graphics communication system, technician and editing of videotaped depositions) reduced the trial time and was reasonable and necessary. The court added that graphic exhibit boards and laser disks are "the modern equivalent to models and blow-ups," the cost was reasonable and necessary, and using the materials saved trial time. Finally, the order stated: (1) $200,000 of the $402,462 requested for document control and database was reasonable and necessary; (2) the CHP video explained aspects of the dispatch system, expedited the trial and was used by SAIC; and (3) technician fees were an integral and necessary component of the graphics.[6]

SAIC filed a petition for writ of mandate requesting that we direct the trial court to vacate the award by writ. We issued an order to show cause.

---

[2]All amounts have been rounded off to the nearest dollar amount.

[3]The award for "litigation expenses" consisted of $200,000 for document control and database, $57,969 for graphic exhibit boards, $101,908 for a CHP video, $106,068 for nine experts, $47,481 for laser disks, $9,916 for a graphics communication system, $11,983 for a technician and $35,652 for editing excerpts of videotaped depositions.

[4]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[5]On remand, the State did not seek reimbursement for expert fees.

[6]The court order stated: "[SAIC] argues the labor of technicians associated with the production of these models, blow-ups, photocopies, and data bases is merely a component of attorney fees and cannot be recovered under [section] 1033.5. On the contrary, these items

## DISCUSSION

### I

██ As a preliminary matter, we address the propriety of writ review notwithstanding the existence of a clear remedy by appeal. It is well known that writ relief is deemed "extraordinary." We deny the vast majority of petitions we see and we rarely explain why. In reality, perhaps the most fundamental reason for denying writ relief is the case is still with the trial court and there is a good likelihood purported error will be either mooted or cured by the time of judgment. As one court has summarized it: "[I]f it were granted at the drop of a hat, [writ review] would interfere with an orderly administration of justice at the trial and appellate levels. . . . [¶] 'If the rule were otherwise, in every ordinary action a defendant whenever he chose could halt the proceeding in the trial court by applying for a writ . . . to stop the ordinary progress of that action toward a judgment until a reviewing tribunal passed upon an intermediate question that had arisen. If such were the rule, reviewing courts would in innumerable cases be converted from appellate courts to nisi prius tribunals[]' . . . [and] [¶] would be trapped in an appellate gridlock. . . ." (*Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266, 1272-1273 [258 Cal.Rptr. 66].)

None of those considerations applies here. We are not putting a halt to the "ordinary progress of the action" toward judgment. The parties have had their day in court, obtained an appellate decision affirming the judgment except for attorney fees and litigation expenses, and received a final ruling from the trial court on remand.

██ A rather complete list of the criteria relied upon for accepting writ review is set forth in *Omaha Indemnity Co.* v. *Superior Court, supra*, 209 Cal.App.3d at pages 1273-1274. The various reasons for granting extraordinary relief may be said, generally, to fall into two categories. The first category relies upon the public or jurisprudential significance of the issue presented. Writ relief is granted when the issue is of widespread interest; when conflicting trial court interpretations need resolution; when a novel or constitutional question is presented. The second category looks to the prejudice imposed upon the petitioning litigant, granting review because the

---

could not be produced without the labor which is an integral component of the cost of the items themselves. Similarly, cost of a deposition or simple chart necessarily includes the labor of the court reporter or artist who created it. The nature and complexity of these state of the art devices required technicians in the courtroom for both sides. The devices would not have worked without the technicians. Hence, these items and the cost of the technicians who made them work are awarded as costs pursuant to [section] 1033.5."

lower court's determination imposes unusually harsh and unfair results for which ordinary appellate review is inadequate.

Generally, the mere fact that appellate review will take much longer to resolve than writ review is not considered a basis for granting writ relief. It was once thought that orders pertaining to enforcement or other relief relating to an existing judgment should be entitled to writ review, to avoid unreasonable delay in effectuating an otherwise decided case. (See 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 114, pp. 749-750.) This concept was rejected in *Phelan* v. *Superior Court* (1950) 35 Cal.2d 363 [217 P.2d 951]. Of note, however, in the *Phelan* rationale, is that the court determined that the remedy by way of ordinary appeal was "almost as speedy as a writ proceeding, under present practice." (*Id.* at p. 370.)

The court's observation in *Phelan* v. *Superior Court, supra,* 35 Cal.2d 363 is obviously a reflection of the status of jurisprudential administration as it existed in 1950, rather than a legal determination warranting stare decisis treatment. We need look no further than our present case to note the changing times. The trial in this case took place in 1992. Posttrial motions followed and a notice of appeal was filed, resulting in briefing which was not completed until August 1994. Our opinion resolving the appeal was filed in January 1995. The remand to the superior court resulted in a revised judgment awarding costs in June of this year. An appeal from this judgment, if promptly briefed, would find itself on our "ready" list somewhere near the end of this year. Our present backlog of some 700 cases would then delay our work on the appeal until roughly mid-1997, with a final resolution, if fortunate and blocked by no untoward delays, near the end of the year 1997. On the other hand, our disposition of this seeming error by the trial court by writ review will be achieved, even with oral argument and supplemental briefing, in some four and a half months from the date of the order.

We presume to update the Supreme Court's factual observation about the time consequence of appellate versus writ review: appellate review these days, in consideration of our overly crowded dockets and generally under-staffed Courts of Appeal, is unduly delayed, and cannot be compared to writ review in terms of time effectiveness.

This fact alone, of course, cannot be the basis for wholesale granting of writ review. As noted in *Omaha Indemnity Co.* v. *Superior Court, supra,* 209 Cal.App.3d at page 1273, the granting of priority to one case inevitably pushes back other cases waiting turn for disposition. Accordingly, we expect

that our typical summary denial of writ review for orders as to which appellate review is (eventually) available, will continue to be standard policy.

We perceive, however, that this case presents special reasons for granting accelerated review. The parties have "stood in line" in the appellate process through one complete turn. The case originally presented multiple and difficult issues; the remaining disputes are narrow. Further, they have already been briefed once and, to some extent, considered by us once. The present status of the case is that the trial judge and we disagree as to one posttrial issue. Should we in this state of affairs require that the parties engage in yet another multiyear process of appeal? We think that such a requirement would be inappropriate. When a piece of litigation has once journeyed the full and tiresome path of appellate review, gaining apparent resolution excepting only one postappellate trial court ruling, and that ruling is made erroneously, we believe the court of appeal should resolve the dangling issue promptly, using (as the only readily available measure) writ review to do so.

## II

### A

Generally speaking, in our system of justice each party pays his own way. There are, however, exceptions. Among them is section 1032, subdivision (b), the statute which entitles the prevailing party to recover "costs" in an action "as a matter of right" except as otherwise expressly provided. (§ 1032, subd. (b).) Section 1033.5 specifies those items that qualify as recoverable "costs" and identifies those that do not.

Section 1033.5, subdivision (a) contains a long list of expenses which are allowable as costs. These include, among numerous other items, filing fees (§ 1033.5, subd. (a)(1)); deposition transcripts (§ 1033.5, subd. (a)(3)); and models, blowups of exhibits and copies of exhibits if reasonably helpful to the trier of fact (§ 1033.5, subd. (a)(12)).[7]

Section 1033.5, subdivision (b) identifies nonrecoverable expenses. There are only five in number:

---

[7]The allowable expenses are (1) filing, motion and jury fees; (2) juror food and lodging during trial and deliberations; (3) deposition costs (costs for transcription, videotaping and copying and travel expenses to attend); (4) process server costs, (5) expenses of attachment; (6) surety bond premium; (7) ordinary witness fees; (8) fees of expert witnesses ordered by the court; (9) transcripts of court proceedings ordered by the court; (10) attorney fees authorized by contract, statute or law; (11) court reporter fees; (12) models and blowups of exhibits and copies of exhibits reasonably helpful to aid the trier of fact; and (13) any other

—fees of experts not ordered by the court (§ 1033.5, subd. (b)(1));

—transcripts of court proceedings not ordered by the court (§ 1033.5, subd. (b)(5));

—investigation expenses in preparing for trial (§ 1033.5, subd. (b)(2));

—postage, telephone, and copying charges except for exhibits (§ 1033.5, subd. (b)(3)); and

—costs for investigating jurors and preparing for voir dire (§ 1033.5, subd. (b)(4)).

The last part of the statute, subdivision (c), contains the rules which apply to all cost awards. Section 1033.5, subdivision (c)(2) states: "Allowable costs shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." Section 1033.5, subdivision (c)(4) provides: "Items not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion." Reading the two subparts of subdivision (c) together with the rest of the cost statute, we conclude, if an expense is neither expressly allowable under subdivision (a) nor expressly prohibited under subdivision (b), it may nevertheless be recovered if, in the court's discretion, it is "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (§ 1033.5, subd. (c)(2); see also *Ladas* v. *California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774 [23 Cal.Rptr.2d 810]; *Ripley* v. *Pappadopoulos* (1994) 23 Cal.App.4th 1616, 1622, 1623 [28 Cal.Rptr.2d 878]; *Winston Square Homeowner's Assn.* v. *Centex West, Inc.* (1989) 213 Cal.App.3d 282, 293 [261 Cal.Rptr. 605].)

Thus, SAIC's primary complaint—that the items represent costs of trial preparation and are not recoverable—is beside the point. The statutory scheme clearly establishes two mutually exclusive sets of trial preparation expenses—one set which is allowable as a matter of right (§§ 1033.5, subd. (a), 1032, subd. (b)) and one which is not (§§ 1033.5, subd. (b), 1032, subd. (b)). Expenses which do not fit into either of these two categories fall into a special statutory safety net: they may be recovered but only at the discretion of the court (§ 1033.5, subd. (c)).

B

The expenses before us are not on the allowable list under section 1033.5, subdivision (a) or the excluded list under subdivision (b). There is a

item required to be awarded to the prevailing party pursuant to statute. (§ 1033.5, subd. (a)(1)-(13).)

$57,969 charge for graphic exhibit boards and another for $101,908 for a video to help the jury appreciate the difference between the manual and computer-assisted dispatch system for the CHP. There is a $200,000 expense for document control and database for internal case management provided by Logan Pearsall, Inc., during discovery and trial. Finally, there are three other items: (1) $47,481 for the production of laser disks "containing" trial exhibits; (2) a graphics communication system that cost $9,916 for the equipment rental and $11,983 for an on-site technician to facilitate the presentation of materials to the jury; and (3) $35,652 to have videotape depositions edited for effective presentation of the testimony to the jury. These expenses are the kind the Legislature probably never contemplated if for no other reason than the technology did not exist until recently.

We cannot say on the record before us the trial court abused its discretion in allowing the recovery for the graphic exhibit boards—board-sized trial exhibits which went to the jury for consideration in reaching a verdict. We take the same approach with the CHP video. Both these items appear to be a computerized form of blowup or model which was apparently, in the opinion of the trial court, reasonably helpful to the trier of fact and possibly fitting within the category of "models and blowups." (§ 1033.5, subd. (a)(12).) Although we endorse the CHP video with less enthusiasm than the exhibit boards because of associated costs of writing, directing and filming the video, we cannot rule it out on this basis alone because the same kind of "creative" design and production expenses go into the final cost of professional charts and exhibits used in trial every day.

▪ The balance of the items are, however, another matter. The document control and database charge, for example, represents the State's expenditure for an outside firm to keep track of the voluminous records in the case—that is, to "Bates-stamp" the documents, input them for retrieval, maintain a document library, create databases to search for records by date, author or subject, etc. The expense is the cost of hiring assistants to help counsel organize documents and access them in discovery and at trial—in other words, the cost of a "high tech" paralegal. Because we have concluded attorney fees are not compensable, we cannot condone payment of paralegal fees. The item is not recoverable.

We take a similar approach with the laser disks and graphics communication system (equipment rental and technician). That is, as we understand it, although the State maintains the laser disks "contained" trial exhibits, the word "contained" more accurately refers to storage: documents and videos were stored on laser disks like hard copy is stored in a filing cabinet. As far

as the graphics communication system is concerned, the equipment was rented and an on-site technician was on hand to present documentary evidence and graphic exhibits to the jury "without interruption due to technical difficulties." Both items appear to be a method of accessing information—a high-powered way of retrieving documents—more than anything else. They are not recoverable.

Finally, the State spent over $35,652 to have the videotaped depositions edited for effective presentation of the testimony to the jury. If, however, the State had selected portions of the depositions to admit into evidence and presented them to the jury, as is normally done, with one lawyer reading the questions and another the answers into the record, the charge would not be recoverable. The fact that the State took a state-of-the-art approach to the testimony does not make it allowable. To the contrary, the existence of the alternative but mundane method of reading aloud strongly suggests the editing "was not reasonably necessary to the conduct of the litigation," however "convenient or beneficial" it may have been. (§ 1033.5, subd. (c)(2).)

In the final analysis, this case presents an unusual issue: how the court should deal with technological advances as costs. Considering the speed of technological evolution, it would be futile for the Legislature to try to keep pace in the compilation of statutory lists. Providing the trial court with discretion under section 1033.5, subdivision (c) in terms of allowance of new categories of costs is a way of opening a door that would otherwise more often than not be closed. However, the trial court must be mindful that costs have grown from the relatively modest amounts we see in early case law to staggering proportions today. If costs are routinely awarded for high-powered technology, most parties will be unable to litigate.

A conclusory observation is appropriate. We are troubled by review of a case in which a party incurred over $2 million in expenses to engage in high-tech litigation resulting in recovery of only $1 million in damages. Perhaps it can be argued that a case such as this, involving high stakes on each side, requires advanced and costly litigation techniques and that the winner should "take all" in terms of cost reimbursement. We simply do not subscribe to this philosophy. If a party litigant chooses unwisely to expend monies in trial presentation in excess of the value of the case, utilizing advanced methods of information storage, retrieval and display, when more conventional if less impressive methods are available, the party must stand his own costs.

Let a writ of mandate issue directing the superior court to vacate its ruling of June 23, 1995, and enter an order consistent with this opinion. This

opinion is made final immediately as to this court. (Cal. Rules of Court, rule 24(d).)

Work, Acting P. J., concurred.

**HUFFMAN, J.**—I concur completely in both the reasoning and the result reached in the majority opinion, except for part I. As to part I, I concur in the result only.