[No. F049334. Fifth Dist. May 4, 2007.]

EL DORADO MEAT COMPANY, Plaintiff and Appellant, v.
YOSEMITE MEAT AND LOCKER SERVICE, INC., et al., Defendants and
Respondents.

**COUNSEL**

Law Offices of Earl L. Bohachek and Earl L. Bohachek for Plaintiff and Appellant.

Schofield & Associates, Louis F. Schofield and Michael A. Maxey, Jr., for Defendants and Respondents.

**OPINION**

**WISEMAN, J.**—After securing a defense judgment on all claims in a complex suit involving alleged business torts, defendant Yosemite Meat and Locker Service, Inc. (Yosemite), obtained a costs award of $191,566. In this appeal, plaintiff El Dorado Meat Company (El Dorado) challenges $143,809 of this amount, claiming the trial court abused its discretion in awarding it. Perceiving no abuse of discretion, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORIES

El Dorado sued Yosemite in 2000, alleging a variety of statutory and common law causes of action, including violations of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), antitrust violations, civil violations of the federal Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961 et seq.), and intentional interference with prospective economic advantage. The claims were based on allegations that Yosemite fraudulently sold boar meat to unsuspecting customers and reduced labor costs by employing undocumented immigrants, practices El Dorado claimed made it uncompetitive and drove it out of business. Some claims were dismissed before trial. Others, including those under RICO, were tried to a jury, which found for Yosemite. Still other claims, including those under the unfair competition law, were tried to the court. The court found for Yosemite and on February 25, 2005, entered judgment for Yosemite on all claims.

Yosemite filed a memorandum of costs on March 17, 2005, seeking to recover $194,704. The $143,809 at issue in this appeal was shown as a single item, labeled "[m]odels, blowups, and photocopies of exhibits." This label was derived from Code of Civil Procedure section 1033.5, subdivision (a)(12),[1] which makes costs for "[m]odels and blowups of exhibits and photocopies of exhibits" recoverable as of right.

El Dorado moved to strike the entire costs memorandum, or, in the alternative, to deny certain items, including the $143,809 claim. The motion argued that no models or blowups were presented at trial and that Yosemite's memorandum of costs did not explain the request.

Yosemite's opposition to the motion to strike, supported by a declaration by its counsel, explained that the item was primarily for costs of preparing trial exhibit 600 and displaying that exhibit at trial. As described in the parties' appellate briefs, this was a 37-page document containing charts and graphs that were projected on a screen during trial. The exhibit summarized voluminous business records produced in discovery by both parties; Yosemite produced 100,000 pages and El Dorado produced 60,000 pages. The records summarized in the exhibit included financial records of Yosemite and El Dorado pertaining to livestock purchases and sales and other matters. The summaries in the exhibit covered the period from 1996 to 2003 and related to such matters as compensation paid to Yosemite's employees, Yosemite's meat purchases and sale prices per pound, and Yosemite's total meat purchases and sales. Other charts and graphs in the exhibit showed El Dorado's financial performance over a 20-year period, including the period during which Yosemite's conduct allegedly caused El Dorado's performance to decline.

Yosemite's opposition to El Dorado's motion to strike broke down the $143,809 into three categories. First, $111,063 was paid for personnel who compiled the data from the business records upon which the charts and graphs were based. The bulk of this amount (stated in Yosemite's appellate brief as $84,783) was paid to Hemming Morse, Inc., a firm of accounting consultants Yosemite employed to process this data. The rest ($26,281) was for time billed by nonattorney personnel at the law firm of Yosemite's counsel for data entry from the business records.

Second, Yosemite's opposition stated that $30,495 was for charges for photocopying the source documents that supported the exhibit. Yosemite's

---

[1] Subsequent statutory references are to the Code of Civil Procedure.

appellate brief appears to hedge this claim, saying this figure represents "bills from outside vendors, primarily but not exclusively, photocopy expenses incurred in the process of preparing Trial Exhibit 600 and other Exhibits." Yosemite asserts, and El Dorado does not deny, that all 160,000 pages of documents were admitted into evidence at trial. Finally, $2,250 was for equipment to project documents on a screen at trial.

After explaining all this, Yosemite's opposition still claimed that the $143,809 was for "models and blowups of exhibits" and that it was entitled to recover it as a matter of right under section 1033.5, subdivision (a)(12). It argued in the alternative, however, that the $111,063 portion paid for personnel who processed the data was also awardable under section 1033.5, subdivision (c)(4), which provides that items not mentioned in the statute "may be allowed or denied in the court's discretion." .

The trial court awarded Yosemite $191,566. This reflected the court's deduction of $3,138. The tentative order in which the court set forth its reasoning has not been made part of the appellate record, but the deduction appears to be for trial transcripts claimed to be, but never actually, ordered prepared by the court.

## *DISCUSSION*

El Dorado argues that the $143,809 was not allowable as a matter of right under section 1033.5, subdivision (a)(12), and that the court lacked discretion to award it under section 1033.5, subdivision (c)(4). As we will explain, the award was within the court's discretion.

■ Except as provided by statute, the party who prevails in any action or proceeding "is entitled as a matter of right to recover costs . . . ." (§ 1032, subd. (b).) Section 1033.5, subdivision (a), contains a list of items allowed as recoverable costs (including "[m]odels and blowups of exhibits and photocopies of exhibits . . . if they were reasonably helpful to aid the trier of fact") (§ 1033.5, subd. (a)(12).) Subdivision (b) contains a list of items that "are not allowable as costs, except when expressly authorized by law . . . ." An item neither specifically allowable under subdivision (a) nor prohibited under subdivision (b) may be allowed or denied in the discretion of the court. (§ 1033.5, subd. (c)(4).) All costs awarded must be "reasonable in amount" and only be for items "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (§ 1033.5, subd. (c)(2), (3).)

A costs award is reviewed on appeal for abuse of discretion. (*Posey v. State of California* (1986) 180 Cal.App.3d 836, 852 [225 Cal.Rptr. 830]; *County of Kern v. Galatas* (1962) 200 Cal.App.2d 353, 360 [19 Cal.Rptr. 348].) This means we must determine "whether the trial court exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339].) Authority on the application of the abuse-of-discretion standard to costs awards (as opposed to attorney fee awards, which are governed by a different statute) is somewhat scarce, but we will assume, contrary to Yosemite's contention, that our task includes determining whether the amount awarded was supported by substantial evidence. We believe the proper standard of review is summed up by the California Supreme Court's statement in the attorney fee context that the trial court's ruling should not be disturbed on appeal unless it is " ' "clearly wrong." ' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 [104 Cal.Rptr.2d 377, 17 P.3d 735].)

In its reply brief, El Dorado claims that we cannot apply the usual abuse-of-discretion standard in this case; it says de novo review has somehow become necessary due to *arguments made by Yosemite*. This reasoning is mistaken. The applicable standard of review is determined by the nature of the challenged action of the trial court, not by what counsel argues about that action.

 We begin with the bulk of the claim, the $111,063 for hourly billings for personnel employed by Yosemite's consultant and counsel to process the raw data that went into exhibit 600. Assuming for the sake of argument that these costs were not recoverable as a matter of right under section 1033.5, subdivision (a)(12), we conclude that they were properly awarded as discretionary cost items under subdivision (c)(4). The essence of this case was El Dorado's claim that Yosemite engaged in illegal business practices that ran El Dorado out of business over a period of several years. Yosemite's defense was that its practices were not illegal and that, in any event, El Dorado went out of business because of a downturn in the market. Given the nature of the case, Yosemite could not mount its defense without presenting years' worth of its own and El Dorado's business data. Given the volume of the data, Yosemite could not present it without summaries. El Dorado does not deny this is true. It was well within the trial court's discretion to conclude that exhibit 600—and the labor necessary to create it—was "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (§ 1033.5, subd. (c)(2).)

Some of the evidentiary support for the $111,063 might be deemed light. Some of the billing records submitted to the trial court include task descrip-

tions that appear to refer to general litigation preparation tasks rather than to the preparation of exhibit 600. For instance, one bill from Hemming Morse refers to "[v]arious discussions with counsel and client personnel regarding this matter and the work to be performed by" Hemming Morse. The manner in which the bills have been redacted makes it unclear whether fees are being claimed for all the tasks described or only some. On the other hand, the declaration of Yosemite's counsel states, under penalty of perjury, that the entire amount was for compilation of data from these business records: "Defendants compiled and summarized the information creating what bec[a]me known as Exhibit 600 . . . . Numerous hours were spent performing the compilation of the information provided on defendants' documents . . . which amounted to $111,063." The weighing of this evidence was for the trial court and we cannot say it was so light as to be insubstantial.

El Dorado appears to argue that, because most of the $111,063 went to Hemming Morse—and Yosemite's expert witness was a partner at Hemming Morse—the fees were akin to expert witness fees and therefore were disallowed by section 1033.5, subdivision (b)(1) ("[f]ees of experts not ordered by the court" disallowed). El Dorado cites no authority, and we know of none, for the idea that "[f]ees of experts" as used in the statute means anything beyond fees charged for the services of experts.

We turn next to the $30,495 awarded for photocopying of exhibits. Costs for photocopies are allowable only if they are copies of exhibits; other copy costs are expressly disallowed by statute. (§ 1033.5, subds. (a)(12), (b)(3).) The copying here was of the 160,000 pages of business documents produced by the parties in discovery and admitted into evidence. The costs therefore were for copies of exhibits and were allowable as of right. The average cost of about 19 cents per page ($30,495 divided by 160,000 pages) is not abnormally high.

At least some of the copies did double duty. The declaration of Yosemite's counsel states that one copying invoice for $17,025.31 was for El Dorado's document production. This means those copies served both for discovery purposes and to make the documents available as trial exhibits. In the absence of law to the contrary (and El Dorado has cited none), the trial court had discretion to award costs for double-duty copying, implicitly interpreting section 1033.5, subdivision (a)(12), as authorizing costs for exhibit photocopies even if the same photocopies were also used for another purpose.

(El Dorado argues that Yosemite has. double-*billed* for the $17,025.31 job— once in the $111,063 personnel item and again in the $30,495 copying item—because the invoice appears twice in the record. Arithmetic reveals that Yosemite included the invoice only in the copying item.)

The evidence, again, might be deemed light. Some of the copying invoices in the record are difficult to. read, and our review of them does not present any easy way of being sure that they all pertain to.copying of the documents that were admitted into evidence. Again, however, we cannot say the evidence was so light as to be insubstantial.

The last item, $2,250 for equipment to project documents on a screen, was also allowable. Section 1033.5, subdivision (a)(12), allows an award for "blowups of exhibits" if "reasonably helpful to aid the trier of fact." The trial court had discretion both to interpret "blowups" as including blowing up documents by projecting them on a screen and to find the projection equipment reasonably helpful.

El Dorado relies on *Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095 [46 Cal.Rptr.2d 332] (*Science Applications*), but that case does not support its contentions. The Court of Appeal there considered several items of costs awarded by the trial court as discretionary items pursuant to section 1033.5, subdivision (c)(4). (*Science Applications, supra*, at pp. 1103–1104.) It held, first, that graphic exhibit boards and a videotape, all presented to the jury, were allowable costs. About the video, the court stated that it had "less enthusiasm" because it involved "costs of writing, directing and filming," but still held that it counted as a "computerized form of blowup or model which was apparently, in the opinion of the trial court, reasonably helpful to the trier of fact . . . ." (*Id.* at p. 1104.)

Next, the court held that an expense for "document control and database for internal case management" was not allowable. This expense was for a vendor's services in creating a searchable electronic library for all the documents a party compiled in the course of the litigation. The court described the personnel used for this purpose as " 'high tech' paralegal[s]" and held that fees for them were not recoverable because attorney fees were not recoverable. (*Science Applications, supra*, 39 Cal.App.4th at p. 1104.) For similar reasons, the court held not allowable the cost of "laser disks and graphics communication system (equipment rental and technician)" that were used to manage exhibits at trial. The court compared this to a file cabinet

used to store exhibits and held that the high-tech version of a file cabinet was not reasonably necessary to the conduct of the litigation. (*Id.* at pp. 1104–1105.)

Finally, the court reversed an award for the cost of editing videotaped depositions for presentation to the jury. It held that this "state-of-the-art approach" also was not reasonably necessary to the conduct of the litigation, since the pertinent portions of the deposition transcripts could simply have been read into the record by counsel. (*Science Applications, supra,* 39 Cal.App.4th at p. 1105.)

El Dorado argues that *Science Applications* points to disallowing the cost of exhibit 600 because the process of creating it was done by high-tech paralegals who entered data into a database. We do not understand *Science Applications* to mean, however, that the cost of creating an *exhibit* that summarizes data is nonrecoverable just because that process includes first building a database from raw data. The database at issue in *Science Applications* contained a document library for the litigation as a whole, not raw financial data upon which an indispensable exhibit was based. Further, the reference in *Science Applications* to high-tech paralegals cannot mean what El Dorado suggests. If the cost of labor for creating an exhibit is a recoverable item, the fact that it was the labor of a paralegal, high-tech or not, makes no difference, assuming the cost was not unreasonably high.

The problem with the electronic equipment and the labor costs rejected in *Science Applications*, as we understand it, was that these were more expensive methods of doing things that could be done by less expensive, low-tech means, and therefore they were not reasonably necessary to the conduct of the litigation but were "merely convenient or beneficial to its preparation." (§ 1033.5, subd. (c)(2).) Here, there is little doubt that using computers and suitably trained personnel to compile the data upon which exhibit 600 was based was more efficient than any low-tech method of doing the same thing. The idea that the cost is not allowable because the exhibit could have been created using adding machines, ledger paper, and pencils instead of electronic databases is antiquated.

In its reply brief, El Dorado relies heavily on *Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550 [47 Cal.Rptr.3d 206], but that case is also unhelpful. It merely held that costs are not recoverable for exhibits prepared for but never used at trial. (*Id.* at pp. 1557–1558.) Exhibit 600 was used at trial, the projection equipment was used to project it, and the underlying photocopied documents were admitted into evidence, becoming trial exhibits.

## *DISPOSITION*

The judgment is affirmed. Yosemite shall recover its costs on appeal.

Vartabedian, Acting P. J., and Hill, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 11, 2007, S153268.