Filed 9/17/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KAVONTE AMARION VAUGHN, | B334060 |
| Petitioner, | (Los Angeles County Super. Ct. No. BA492324) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in mandate. Renee F. Korn, Judge. Petition granted.

Ronald J. Higgins for Petitioner.

No appearance by Respondent.

George Gascon, District Attorney, Tracey Whitney, Kenneth Von Helmolt and Jeffrey Herring, Deputy District Attorneys, for Real Party in Interest.

————————————————

# INTRODUCTION

In this case, Kavonte Amarion Vaughn seeks a writ of mandate vacating an order denying mental health diversion under Penal Code sections 1001.35 and 1001.36 in his pending criminal case, in which he is charged with two counts of second degree robbery and one count of second degree attempted robbery.[1]  The trial court concluded that Vaughn made a prima facie showing satisfying the eligibility and suitability requirements for mental health diversion, including that Vaughn would not pose an unreasonable risk of danger to public safety. But it denied diversion because, in the court's view, Vaughn failed to make "a serious enough effort for this court[ ] to find that he is suitable for mental health diversion."

The Legislature gave trial courts discretion to deny mental health diversion even after a criminal defendant has made a prima facie showing of eligibility, but that discretion must be informed by the legislative goals underlying the mental health diversion law.  The trial court here did not consider these legislative goals when it denied Vaughn's motion.  Because the trial court abused its discretion, we issue the writ and direct the trial court to grant his motion for mental health diversion.

---

[1]  Statutory references are the Penal Code unless otherwise noted.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Pending Charges*

On March 12, 2021, the district attorney filed a complaint against Vaughn for two counts of second degree robbery (§ 211, counts 1 and 2), one count of first degree murder (§ 187, subd. (a), count 3), and one count of second degree attempted robbery (§§ 221, 664, count 4) relating to events that took place on December 2020.  Vaughn posted bail in April 2021.

At the preliminary hearing, the People presented evidence that Vaughn and a codefendant robbed two stores, holding the store clerks at gunpoint and taking cash from the register.  The next day, Vaughn and two codefendants attempted to rob a marijuana dealer, who was shot and killed.  Following the preliminary hearing, the People filed an information alleging the same counts as in the complaint.  Vaughn and his codefendants filed motions to dismiss pursuant to section 995.  The trial court dismissed the first degree murder count, but otherwise denied the motions.

B.    *Vaughn's Mental Health Examination*

Pursuant to a court order, Mark J. Souris, Psy.D., conducted a psychological examination of Vaughn.  Vaughn was 20 years old at the time of the evaluation and had been out on bail since April 2021.  Vaughn was 30 minutes late to the evaluation.  The examination lasted approximately three hours and 20 minutes, and Vaughn's mother, LaToya Hudson, attended the final phase of the evaluation.  Dr. Souris noted Hudson provided helpful information about Vaughn's psychiatric history

since Vaughn frequently stated, "'I don't remember'" during the examination.

Dr. Souris also reviewed 25 documents, including Vaughn's medical records regarding hospitalizations, safety crisis plans, and prescriptions. The documentation reflected "prescriptions of Zyprexa (antipsychotic), Lexapro (antidepressant), and Desyrel (antidepressant likely targeting sleeplessness)" in April 2022, "psychotropic medications that included Depakote (mood stabilizer) and Zyprexa" in May 2022, and Zyprexa in June 2022.[2] Because Vaughn did not bring his medication bottles to the evaluation, even though Dr. Souris repeatedly requested before the evaluation that he do so, Dr. Souris stated he was unable to confirm the medications Vaughn was currently taking. Hudson reported that Vaughn had been taking medications consistently during the past year and a half, although she was unable to recall their specific names. Relying on Hudson's information, Vaughn's report of improved sleep and reduced paranoia, and Dr. Souris's personal observation of Vaughn's "relative lucidity at the present evaluation," Dr. Souris concluded that continued consumption of medications "allegedly prescribed by a Kaiser healthcare provider" would be beneficial. Dr. Souris also noted that Vaughn "expressed a wish to avoid any additional legal penalties, ultimately fostering his consent to diversion, and continued mental health treatment programming as a condition of diversion."

Vaughn's medical history included two instances of "probable traumatic brain injury" that he experienced during an

---

[2] The documents Dr. Souris relied on are not included in the record before us.

4

assault at age 14 and at a football game at age 17.  The assault caused Vaughn to suffer from post-traumatic stress disorder (PTSD), including "avoidance of thoughts, and conversations, and feelings about the traumatic event."  Vaughn stated he had been hospitalized approximately 10 times for mental breakdowns, which Hudson corroborated, noting "her son's high frequency of hospitalization over the past few years."  Vaughn experienced at least two involuntary psychiatric hospitalizations that extended beyond the 72-hour maximum period per Welfare and Institutions Code section 5150.  As to the two robberies charged in this case, Vaughn "reveal[ed] absolutely no recollections" of his conduct at the time of the crimes.  Vaughn "reportedly had no recollections of these incidents, appearing astonished, surprised, and even indignant at the very introduction of the topic by this examiner."  There was no evidence of any illicit drug use history.

Dr. Souris administered four tests:  Buss Perry Aggression Questionnaire (AQ), Brief Symptom Inventory (BSI), Post-traumatic Stress Disorder Check List – Civilian Version (PCL-C), and Patient Health Questionnaire (PHQ).  Based on Vaughn's scores on the AQ, Dr. Souris opined that Vaughn "attempted to 'outsmart' the test, suggesting the presence of a 'social desirability' bias," which Dr. Souris explained likely resulted from "the stigma associated with Mr. Vaughn's awareness that he struggles with significant cognitive difficulties and forms of mental illness."  Dr. Souris also noted Vaughn's stigma was "exacerbated since he, like most 20-year-olds, likely engages in a frequent social comparison process with his peers."  Vaughn also told Dr. Souris that "'I really don't know why I'm like this and it bothers me to talk about it.'"  Vaughn's BSI symptom profile produced lower than expected scores, but Dr. Souris found

"current evidence of lingering psychosis in [Vaughn's] profile" and "persisting signs of a depressive orientation." Vaughn's score on the PCL-C denoted "the presence of PTSD symptoms that are in the 'High severity' range." Lastly, Vaughn's PHQ score "indicat[ed] a 'moderately severe' level of depression."

Dr. Souris observed that Vaughn "showed significant defensiveness during the examination, being particularly resistive to disclosing personally relevant issues of a psychiatric nature." He also exhibited "significant language comprehension deficits," "notable deficits in areas of complex cognition (viz., problems in attention, concentration, short-, and long-term memory, as well as working memory, in conjunction with language production and reception difficulties)," and "'avoidance' (e.g., avoidance of thoughts, and conversations, and feelings about the traumatic event)." Dr. Souris observed that "[b]ecause of his hallucinations, delusions, and mood fluctuations, Mr. Vaughn historically feels distrustful of others, conducive to alienation feelings that cause either a pattern of interpersonal distancing or impulsive 'acting out' behavior, most notably during periods of acute manic functioning during which he engages in grandiose activities which culminated in the charged offenses. As a consequence of his current pattern of psychotropic medication compliance, which he understands to be important, Mr. Vaughn's paranoia has waned, and he shows neither a phasically manic nor depressed presentation."

Based on his clinical evaluation, Dr. Souris offered five opinions corresponding to the statutory criteria required to make a prima facie showing for mental health diversion: (1) Vaughn currently suffers from a "mood-related, psychotic diagnosis of schizoaffective disorder, bipolar type, multiple episodes, currently

6

in partial remission," post-traumatic stress disorder, and an unspecified neurocognitive disorder; (2) "[a]t the time of the instant matter, Mr. Vaughn was experiencing a severely decompensated state of psychotic illness, and mood reactivity that was most likely associated with the phasic manic component of his schizoaffective disorder;" (3) "Mr. Vaughn's symptoms motivating his criminal behavior would be responsive to continued mental health treatment;" (4) "Mr. Vaughn understands the importance of regular psychotropic medication consumption, and likely the need for compliance with psychosocial forms of treatment such as mental health counseling and psychotherapy;" and (5) "[i]f appropriate treatment . . . is in place, then the risk level for Mr. Vaughn's future dangerousness . . . is more likely than not to be at a low level." He concluded that: "Without the proposed neurological/neuropsychological assessments, in conjunction with a structured course of successful programming that fosters adherence to psychotropic medication regimens, and individual-, and/or group-based mental health counseling and psychotherapy routines, . . . Mr. Vaughn remains prone to impulsive acts, leading him to periodically behave in threatening ways, greatly increasing the probability of recidivism."

C.    *Motion for Mental Health Diversion*

Vaughn filed a motion for mental health diversion attaching Dr. Souris's 20-page report.

At the hearing on the motion, the People did not offer any evidence and stated they were "just going to object and submit and leave it in the auspicious [*sic*] of this court." Vaughn's counsel emphasized that Vaughn suffered from qualifying mental

conditions, had no prior criminal record, and had not missed a court appearance while being out on bail. Vaughn's counsel also noted that Vaughn had two young children and that he held several jobs, and Vaughn had the support of his mother.

The trial court found that Vaughn met the eligibility criteria for diversion because he was diagnosed with a qualifying mental health disorder that was a significant factor in the commission of the charged offense. The court noted its view that it did not "believe that there [was] evidence that the defendant's mental disorder was a significant factor in the commission of the charged offense," but that a "change in the law" effective January 1, 2023 required the court find the significant factor prong met "unless there is clear and convincing evidence that it was not a motivating factor."

The trial court stated it was "not so certain" that Vaughn consented to diversion, but it was "guessing he's going to tell me right now that he's consenting to it." When asked by the court if Vaughn consented to diversion and waived his speedy trial rights, and whether he agreed to comply with treatment as a condition of diversion, Vaughn's counsel responded, "Absolutely," to both questions. The court found that Vaughn would not pose an unreasonable risk of danger to public safety if treated in the community. After reviewing the enumerated eligibility and suitability criteria in section 1001.36, the court stated it "[found] the defense has made a prima facie showing that he meets the minimum requirements."

The trial court nonetheless further stated that it "finds the defendant eligible, but not suitable for mental health diversion." Specifically, it denied Vaughn's motion because of his "inability to recognize the seriousness of the situation in which he finds

8

himself" and his failure to make "a serious enough effort for this court[ ] to find that he is suitable for mental health diversion." The court found "alarming" that Vaughn failed to bring his medication bottles to his meeting with Dr. Souris. The court inferred from Vaughn's failure to "provid[e] information[ ] beneficial to that evaluation" that he was "someone who's really not interested in dealing with his mental health disorder." Thus, the court viewed Vaughn's courtroom consent to diversion as "not genuine." The court also commented that it has "yet to see a mental health diversion report from a doctor saying the defendant is not eligible or suitable. This doctor tried so hard in his report to, from this court's perspective, assist the defendant to make him eligible."[3]

Vaughn filed this petition for a writ of mandate and requested a stay of his trial. We issued an order to show cause and stayed the trial court proceedings pending further order of this court. The People filed a written return, and Vaughn did not file a reply.

---

[3] Upon a request for clarification from Vaughn's counsel, the court stated that, "the Court finds that lack of actually bringing his pills into court [*sic*], actually providing information, beneficial to that evaluation, is someone who's really not interested in dealing with his mental health disorder and that indeed is suitability. As such, the court finds that he is not suitable at this time. So I am denying it."

## DISCUSSION[4]

A.   *Governing Law and Standard of Review*

In 2018, the Legislature enacted sections 1001.35 and 1001.36 to create a pretrial diversion program for defendants with certain mental health disorders.  (See *People v. Frahs* (2020) 9 Cal.5th 618, 624.)  Pretrial diversion "allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment."  (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 890 (*Sarmiento*).)  The statute expressly promotes "[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety."  (§ 1001.35, subd. (a); *Sarmiento,* at p. 887 ["section 1001.36 was designed to encourage trial courts to broadly authorize pretrial mental health diversion, providing treatment for qualifying mental disorders that result in criminal behavior"]; *People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149 (*Whitmill*) ["[t]he Legislature intended the mental health diversion program to apply as broadly as possible"]; accord, *People v. Williams* (2021) 63 Cal.App.5th 990, 1004 (*Williams*).)

---

[4]   We review the issue raised in Vaughn's petition given the relative newness of the amended mental health diversion statute and to provide guidance about a trial court's discretion to deny diversion even after a prima facie showing of eligibility and suitability.  (See *Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 707 [explaining writ relief is proper where "[the] issues warrant prompt resolution given the relative novelty of the military diversion program and likelihood that the issues presented here will repeat as military defendants seek the chance

10

Section 1001.36, subdivisions (b) and (c), sets forth the criteria for eligibility and suitability for diversion.[5] Eligibility entails satisfaction of two prongs: (1) a defendant has been diagnosed with a recognized mental health disorder, and (2) the disorder was "a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(2).) The second prong is presumptively satisfied "unless there is clear and convincing evidence that [the disorder] was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (*Ibid.*) Subdivision (d) of section 1001.36 identifies certain offenses ineligible for pretrial diversion, including murder and rape.

Once eligibility is established, a trial court "must consider whether the defendant is suitable for pretrial diversion." (§ 1001.36, subd. (c).) A defendant is suitable if: (1) in the opinion of a qualified mental health expert, the defendant's mental health disorder would respond to treatment; (2) the defendant consents to diversion and agrees to waive their speedy

to participate in the program"]; see generally *Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095, 1100 [writ review appropriate in cases presenting an issue of "public or jurisprudential significance," such as "a novel or constitutional question," an issue "of widespread interest," or an issue that has produced "conflicting trial court interpretations [that] need resolution"]; accord, *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1273.)

[5] As of July 1, 2024, section 1001.36, subdivision (b)(1), no longer excludes a defendant diagnosed with borderline personality disorder from pretrial diversion. This amendment is not relevant to our analysis.

trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an "unreasonable risk of danger to public safety" as defined in section 1170.18 if treated in the community.  (*Id.*, subd. (c)(1)-(4).) The second and third suitability requirements—consenting to diversion, waiving speedy trial rights, and complying with treatment as a condition of diversion—are not required when considering mental health diversion for individuals who have been deemed incompetent.  (See *id.,* subd. (c)(2), (3); *People v. Braden* (2023) 14 Cal.5th 791, 815.)

Section 1001.36, subdivision (e), places the burden on the defendant "to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion."

If the defendant is both eligible and suitable, the trial court must also be satisfied "that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (f)(1)(A)(i); *Sarmiento, supra,* 98 Cal.App.5th at p. 892 [explaining assessment of the recommended mental health treatment "is not an additional eligibility or suitability requirement the defendant must meet" but rather "contemplate[s] an ongoing assessment to assure that defendants will receive appropriate treatment for their particular conditions"].)

Finally, the statute gives the trial court discretion to deny diversion even if the statutory requirements are met:  "[T]he court *may, in its discretion, . . .* grant pretrial diversion to a defendant" after the court considers the two eligibility and four suitability requirements.  (§ 1001.36, subd. (a), italics added; Sen.

12

Bill No. 215, Assem. Com. on Pub. Saf., June 12, 2018 hearing, p. 7 ["If a judge feels that a defendant's participation in a diversion program is not appropriate from the standpoint of public safety, or any other reason, the judge can prohibit the defendant from participating in diversion."]; *People v. Brown* (2024) 101 Cal.App.5th 113, 121; *Sarmiento, supra,* 98 Cal.App.5th at p. 892; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1079.)

This residual discretion is not unfettered and must be exercised "'consistent with the principles and purpose of the governing law.'" (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 891 (*Qualkinbush*); see *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977 ["'[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.'"]; *Williams, supra,* 63 Cal.App.5th at p. 1001 ["scope of discretion always resides in the particular law being applied"].) "Where the court chooses to exercise this residual discretion to deny diversion, its statement of reasons should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals." (*Sarmiento, supra*, 98 Cal.App.5th at p. 893.)

We review the trial court's decision to grant or deny a motion for mental health diversion for abuse of discretion. (See *People v. Graham* (2024) 102 Cal.App.5th 787, 795; *Whitmill, supra,* 86 Cal.App.5th at p. 1147; *People v. Moine* (2021) 62 Cal.App.5th 440, 448-449.) "'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on . . . factual findings that are not supported by substantial evidence

13

[citation].'" (*Graham*, at p. 795.) "'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' [Citation.] However, '[a] reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork; a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities without evidence.'" (*People v. Grant* (2020) 57 Cal.App.5th 323, 330.)

B.    *The Trial Court Abused Its Discretion by Denying Mental Health Diversion*

The trial court expressly found that Vaughn made a prima facie showing he met the statutory requirements for mental health diversion, that is, that he was both "eligible" and "suitable" for diversion. (§ 1001.36, subds. (b)-(c).) But the court denied Vaughn's motion because of "the defendant's inability to recognize the seriousness of the situation in which he finds himself." In the court's view, Vaughn failed to make "a serious enough effort for this court" to believe he actually agreed to mental health diversion because of his failure to bring his medications to his clinical evaluation by Dr. Souris and unspecified responses during that evaluation. We conclude the trial court abused its discretion because (1) substantial evidence does not support its finding that Vaughn was not suitable for diversion, and (2) the court's exercise of its residual discretion was inconsistent with the principles and purpose of the mental health diversion statute.

14

1. *Substantial evidence does not support the trial court's finding that Vaughn was not suitable for diversion.*

As stated, the trial court found that Vaughn made a prima facie showing of eligibility and suitability under the mental health diversion statute. And when the trial court asked counsel if Vaughn consented to diversion and would comply with treatment, his counsel unequivocally responded, "Absolutely." The record does not reflect, nor did the trial court make any finding, that Vaughn lacked the mental capacity to consent to diversion or to mental health treatment. Notwithstanding Vaughn's prima facie showing, the trial court found him unsuitable for diversion based on the court's determination that Vaughn failed to make "a serious enough effort for this court[ ] to find that he is suitable for mental health diversion."

Vaughn contends this was an abuse of discretion because the trial court's primary reason for finding Vaughn unsuitable was that he forgot to bring his medications to his examination. The People oppose and argue substantial evidence supports the trial court's denial. In addition to Vaughn's failure to bring his medications and his late arrival to his examination, the People highlight other parts of Dr. Souris's report, including: Vaughn's initial denial that he was taking psychotropic medication, which he later recanted; Vaughn's inability to recall the names of the medications; Dr. Souris's observation regarding Vaughn's "'sustained periods of psychotropic medication non-compliance;'" Vaughn's resistance to discussing his psychiatric health; and Vaughn's underreported anger-related characteristics and false or exaggerated reports of paranoia.

But the People did not present any argument or evidence challenging Dr. Souris's opinions in the trial court. And we agree with Vaughn that his failure to bring his medications is not substantial evidence that supports the trial court's decision. We do not find persuasive the People's argument that other evidence in the record adds up to substantial evidence. The observations and concerns about Vaughn's behavior during his evaluation that the People raise are best considered against the backdrop of Dr. Souris's undisputed opinion that Vaughn was eligible and suitable for mental health diversion.

In this light, the purported deficiencies the People identify in Dr. Souris's report, while ignoring his ultimate conclusions, do not constitute substantial evidence supporting the trial court's finding Vaughn was unsuitable for diversion. (See, e.g., *Whitmill, supra,* 86 Cal.App.5th at p. 1151 [reversing denial of mental health diversion because substantial evidence did not support finding defendant posed an unreasonable risk to public safety; "it is unclear how the court determined that the expert opinion here did not find a low risk for future dangerousness when Dr. Campbell expressly concluded that appellant fit the eligibility criteria under section 1001.36"].) Dr. Souris opined that Vaughn benefitted from his current treatment, that Vaughn understood the importance of taking his medications, and that Vaughn "expressed a wish to avoid any additional legal penalties, ultimately fostering his consent to diversion, and continued mental health treatment programming as a condition of diversion." Even though Vaughn failed to bring his medication bottles, despite numerous requests, Dr. Souris was able to reconstruct Vaughn's medication history based on the documents he reviewed, Vaughn's descriptions of how the medications have

16

aided him, Vaughn's behavior during the evaluation, and his mother's information about Vaughn's medical history.

Further, Dr. Souris's diagnosis that Vaughn has multiple mental health disorders is undisputed. Thus, Vaughn's conduct and responses that the People identify to support the trial court's order are best considered in the context of the effect that Vaughn's mental health has on his behavior. Dr. Souris explained that Vaughn has "significant language comprehension deficits," including his concentration and memory, and also has avoidance tendencies that caused Vaughn's reluctance to discuss traumatic events in his life. Vaughn's forgetfulness, his resistance to talking about his mental health, and his responses to various questions, which both understated and overstated symptoms or experiences, were explained and reconciled by Dr. Souris in his evaluation and unrebutted opinions. Although Vaughn's conduct may not have conformed to the trial court's expectations, the court failed to consider his behavior in the context of Dr. Souris's unrebutted diagnoses and opinion.

Under these circumstances, the trial court abused its discretion by denying Vaughn's motion. Substantial evidence does not support its finding that Vaughn's conduct somehow indicated a lack of suitability because he was "someone who's really not interested in dealing with his mental health disorder." (Cf. *Sarmiento, supra,* 98 Cal.App.5th at p. 894 [defendant's failure to stay sober "[did] not rationally support a conclusion that a comprehensive program of treatment for her underlying mental health diagnoses of PTSD and depression, coupled *with* substance abuse treatment, would not yield different (and more positive) results"].)

17

2. *The trial court did not exercise its residual discretion with consideration of the principles and purposes of the mental health diversion law*

Section 1001.36, subdivision (a), gives the trial court discretion whether to grant or deny pretrial diversion. (§ 1001.36, subd. (a) ["the court *may, in its discretion . . .* grant pretrial diversion to a defendant"; italics added].) But, as stated, this discretion is not unfettered, and a trial court exceeds the scope of its discretion if it applies the statute in a manner inconsistent with the primary purposes of the mental health diversion law. (See § 1001.35; *Sarmiento, supra,* 98 Cal.App.5th at p. 897; see, e.g., *Whitmill, supra,* 86 Cal.App.5th at p. 1155 ["nothing in the diversion statute suggest[s] the Legislature intended to give courts discretion to deny diversion simply because diversion is or may be less motivating than probation or prison"].) "The stated purpose of this legislation is to keep people with mental disorders from entering and reentering the criminal justice system while protecting public safety, to give counties discretion in developing and implementing diversion across a continuum of care settings, and to provide mental health rehabilitative services." (*Whitmill*, at p. 1149; accord, *Qualkinbush, supra*, 79 Cal.App.5th at p. 886; § 1001.35.)

Here, the "strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community" should inform a trial court's discretion. (*Sarmiento, supra*, 98 Cal.App.5th at pp. 892-893; *Williams, supra,* 63 Cal.App.5th at pp. 1004-1005 ["we emphasize that our trial courts must give serious consideration to this critical alternative [of mental health diversion], for the good not just of mentally ill offenders but,

18

ultimately, society at large"].)  Indeed, the Legislature expanded the reach of the statute because "the mental health diversion law has been substantially underutilized due, in part, to its narrow eligibility requirements. . . . ¶ 'For example, LA County has only diverted a few hundred people using the law'" even though a substantial percentage "'of people in the LA County jail system's mental health population were found to be appropriate for release into a community-based diversion program, according to a recent study by the RAND Corporation.'"  (Sen. Bill No. 1223, Sen. Com. on Pub. Saf., Mar. 9, 2022, p. 5.)  The legislative amendments narrowed the trial court's role in determining eligibility by implementing a presumption that a defendant's diagnosed mental health disorder is a significant factor in the commission of the crime absent clear and convincing evidence otherwise.  (See § 1001.36, subd. (b).)  A trial court's denial of mental health diversion using its residual discretion should be limited to those situations where the purposes of the statute would not be achieved.[6]  (See *Sarmiento, supra,* 95 Cal.App.5th at pp. 891-892.)

---

[6] The Legislature made clear that diverting individuals who may be safely treated in the community alleviates the institutional problems caused by placing defendants with mental disorders in the State's prison system.  "Roughly a third of inmates in California's jails suffer from serious mental illness. At least one study has concluded that California's jail system has become de facto the largest mental health service provider in the United States, despite being ill-equipped to do so.  In the last decade alone, lawsuits resulting from jail overcrowding and inmate death or injuries relating to inadequate mental health care or mistreatment of the mentally ill have cost California

19

That is not what the trial court did in this case. The court's denial was based on its view that Vaughn lacked sufficient seriousness to participate in diversion. But it did not examine Vaughn's behaviors that motivated its decision (e.g., forgetting his medicine bottles, "inability to recognize the seriousness of the situation in which he finds himself," and the failure to "provid[e] information[ ] beneficial to that evaluation") in the context of his mental health diagnoses or the broader statutory purposes. The statute does not require a defendant to display a particular attitude or disposition to persuade the trial court that he or she is worthy of mental health diversion. As *Sarmiento* explained, "the question is not whether Sarmiento 'deserved' the opportunity for treatment. The Legislature has determined that in most cases, the community will be safer if defendants like Sarmiento receive mental health treatment so that they will pose fewer risks to the community both now and in the future." (*Sarmiento, supra,* 98 Cal.App.5th at p. 898; see *Whitmill, supra,* 86 Cal.App.5th at p. 1155 [the "trial court appeared to be grafting on a seventh element that defendants show they do not need to be additionally motivated" to qualify for mental health diversion].) That accords with Dr. Souris's conclusion here that without proper treatment the probability of Vaughn's recidivism would "increas[e]."

---

hundreds of millions of dollars." (Sen. Bill No. 215, Assem. Com. on Pub. Saf., June 12, 2018, p. 5.)

Having met his burden of stating a prima facie case for diversion, the People needed to argue or present evidence to show the eligibility or suitability criteria had not been met, or that notwithstanding meeting the criteria, Vaughn was still unsuitable for diversion. Here, the People made no argument and submitted no evidence. The trial court's speculation that Vaughn was not serious about treatment based on the evidence before it did not "reflect consideration of the underlying purposes of the statute" nor did it "explain why diversion would not meet those goals."[7] (*Sarmiento,* at p. 893.)

Further, the trial court's comments during the hearing reflected a reluctance to apply the mental health diversion statute to Vaughn, which contradicts the legislative intent to apply the statute broadly when the statutory requirements are met. The court stated it did not believe that Vaughn's mental health disorder was a significant factor in the commission of the charged offense, although it acknowledged the statute required it to presume this element was satisfied, absent clear and convincing evidence to the contrary. This statement was also contrary to Dr. Souris's unrebutted opinion that, at the time of the robberies he was charged with, Vaughn was in a "decompensated state of psychotic illness" and in the "manic component of his schizoaffective disorder."

---

[7] To the extent the trial court believed Vaughn would not participate in the program, the statute provides that criminal proceedings may be reinstated upon determination by a qualified medical professional that "[t]he defendant is performing unsatisfactorily in the assigned program." (§ 1001.36, subd. (g)(4)(A).)

21

The trial court also commented that it has "yet to see a mental health diversion report from a doctor saying the defendant is not eligible or suitable.  This doctor tried so hard in his report to, from this court's perspective, assist the defendant to make him eligible."  To the extent the court justified its denial of mental health diversion to Vaughn by expressing skepticism about Dr. Souris's report, not only does the comment reflect reluctance to apply the mental health diversion statute, as with its other comments and ultimately its conclusion, it does so without examining the broader principles and purposes of the statute.  Accordingly, the trial court's denial of mental health diversion to Vaughn using its residual discretion was contrary to the legislative mandate that the diversion statute be broadly applied to achieve its intended ends.

## DISPOSITION

The petition is granted.  A peremptory writ of mandate shall issue directing respondent superior court to vacate its order denying Vaughn's motion for mental health diversion and to enter a new order granting the motion, absent any evidence of changed circumstances that affect Vaughn's suitability for mental health diversion.  Further proceedings should be consistent with this opinion, including the trial court's confirmation "that the recommended inpatient or outpatient program of mental health treatment will meet the specialized

22

mental health treatment needs of the defendant." (§ 1001.36, subd. (f)(1)(A)(i).)

MARTINEZ, P. J.

We concur:

SEGAL, J.

FEUER, J.