Filed 6/21/16  Tuttle v. Ukiah Adventist Hospital CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JACK TUTTLE et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>UKIAH ADVENTIST HOSPITAL,<br><br>        Defendant and Respondent. | A144759<br><br>(Sonoma County<br>Super. Ct. No. SCV-248442)<br>ORDER MODIFYING OPINION AND<br>DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed May 31, 2016, be modified as follows:

1. On page 2, the last sentence on the page which continues on to page 3 should be modified to read as follows:

At the request of the trial court, which expressed a desire to have clarity on the scope of trial for the jury, the parties entered into a stipulation on liability that was read to the jury and provided in pertinent part:    Medical Center "was negligent in its use and maintenance" of the office complex and "caused . . . Jack Tuttle's fall;" "neither Jack

1

Tuttle [n]or any other individual or entity bears any comparative fault for Mr. Tuttle's fall;" and Medical Center was "only contesting the full extent of Mr. Tuttle's claimed injuries and damages."

2. On page 3, the first two sentences of the first full paragraph should be modified to read as follows:

When discussing the stipulation and a related statement of the case with the trial court, Medical Center's counsel alerted the court and plaintiffs that Medical Center would likely be seeking "setoffs" or "credits" for the settlements once the jury put a number on damages. Counsel also repeatedly sought assurance any concessions would not be understood as foreclosing Medical Center from seeking such setoffs or credits.

There is no change in the judgment.
The petition for rehearing is denied.

Dated:

_____
Humes, P. J.

2

Filed 5/31/16  Tuttle v. Ukiah Adventist Hospital CA1/1 (unmodified version)
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JACK TUTTLE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> UKIAH ADVENTIST HOSPITAL, <br><br> Defendant and Respondent. | A144759 <br><br> (Sonoma County <br> Super. Ct. No. SCV-248442) |

### INTRODUCTION

Liability in this slip-and-fall case was uncontested, and several defendants settled with plaintiffs Jack and Megan Tuttle before trial.  The last remaining defendant, Ukiah Adventist Hospital d/b/a Ukiah Valley Medical Center (Medical Center), went to trial on the issue of damages, and the court promptly entered judgment on the jury's verdict for the full amount of the Tuttles' damages.  Thereafter, Medical Center sought and was granted setoffs and credits under Code of Civil Procedure section 877 for the pretrial settlements and workers' compensation payments made by the insurance carrier for Jack Tuttle's employer.[1]  It also successfully moved to tax the Tuttles's claimed costs for expert witnesses, trial technology, and prejudgment interest.  After entry of an amended judgment, the Tuttles unsuccessfully sought to further reduce the offsets and credits.  The Tuttles appeal.

---

[1]  All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

As to the setoffs, the Tuttles contend, among other things, that Medical Center improperly sought them by way of a postjudgment motion to vacate under section 663. While no court has expressly approved use of a postjudgment motion to vacate, a number of courts have inferentially done so. We also agree with other courts that have concluded the label affixed to a motion seeking setoff is unimportant, as long as its substance makes clear the defendant is seeking setoff under section 877 and, if the motion is filed postjudgment, it is timely filed and ruled on.

The Tuttles alternatively contend that even if Medical Center's motion to vacate was procedurally proper, the amount of the setoff should have been reduced under the "common fund" doctrine to reflect the attorney fees and costs they incurred in obtaining the settlements. As far as our research discloses, no court has ever suggested this longstanding doctrine applies to the equally long-established statutory entitlement to setoff for prejudgment settlements. We conclude a deduction for plaintiff's attorney fees and costs is inconsistent with both the plain language of section 877 and the impetus for and requirements of the common fund doctrine. We therefore decline to read into the statute a deduction for plaintiff's fees and costs incurred in obtaining a settlement.

We conclude the Tuttles's other arguments also lack merit, and affirm the amended judgment.

### BACKGROUND

Jack Tuttle slipped and fell down 22 steps at an office complex where his employer, Lincare, leased space. He and his wife, Megan Tuttle, sued a number of entities connected with the complex, but not Lincare. The Tuttles settled with many of them: Ceramic Tile World, Inc. paid $35,000; Selberg Associates paid $500,000 ($430,000 allocated to Jack Tuttle); and in a "global settlement," other defendants paid a total of $2.2 million ($1.9 million allocated to Jack Tuttle).

The Tuttles went to trial against the lone remaining defendant, Medical Center, on the issue of damages. The parties entered into a stipulation on liability that was read to

2

the jury and provided in pertinent part: Medical Center "was negligent in its use and maintenance" of the office complex and "caused . . . Jack Tuttle's fall;" "neither Jack Tuttle [n]or any other individual or entity bears any comparative fault for Mr. Tuttle's fall;" and Medical Center was "only contesting the full extent of Mr. Tuttle's claimed injuries and damages."

When discussing the stipulation with the trial court, Medical Center's counsel alerted the court and plaintiffs that Medical Center would likely be seeking "setoffs" or "credits" for the settlements once the jury put a number on damages. Counsel also repeatedly sought assurance the language of the stipulation would not be understood as foreclosing Medical Center from seeking such setoffs or credits. The trial court sympathized, telling the Tuttles's counsel "I'm not going to allow you to have your so-called cake and eat it, too." The Tuttles's counsel then responded he was willing to "go along with it."

The jury found Jack Tuttle sustained total damages of $2,476,378.86 and Megan Tuttle sustained $150,000 in damages for lack of consortium. Following the verdict, the trial court instructed the clerk to record it and asked counsel if there was "anything further at the moment," to which all replied there was not. The court then entered judgment in accordance with the verdict.

Shortly thereafter, Medical Center filed a motion under section 663 to vacate the judgment and enter a new judgment reflecting setoffs and credits for the pretrial settlements and workers' compensation benefits paid by the insurance carrier for Jack Tuttle's employer.[2] It also filed a motion to tax the Tuttles's claimed litigation costs, including expert witness fees, trial technology expenses, and prejudgment interest.

---

[2] Medical Center had purchased the carrier's workers' compensation lien.

3

The Tuttles filed their own posttrial motions, including one seeking to reduce the amount of the credit Medical Center could receive for the workers' compensation benefits.

The trial court ordered setoff and reduced the judgment by the portion of the settlements attributable to economic damages ($1,074,843.40) and by the workers' compensation benefits minus attorney fees ($375,312.41). The court denied the Tuttles's motion for a further reduction in the setoffs and credits, and in a separate order, partially granted Medical Center's motion to tax costs as to expert witnesses, trial technology expenses, and prejudgment interest. The court thereafter entered an amended judgment awarding Jack Tuttle $1,026,223.05 and Megan Tuttle $150,000.

The Tuttles moved to further amend the judgment and sought to provide evidence of costs they claimed should further reduce the credit for the workers' compensation payments. They also asked the trial court to invoke the "common fund" doctrine to reduce the setoff for the pre-verdict settlements by the amount of attorney fees and costs they claimed to have incurred in obtaining the settlements. The trial court denied the motion.

**DISCUSSION**

*Medical Center Did Not Waive or Forfeit Its Right to Setoff*

Section 877, subdivision (a), provides in pertinent part that "a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment . . . given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more co-obligors mutually subject to contribution rights" shall "reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater." In other words, section 877 provides that a judgment in favor of a tort plaintiff shall be offset by the amount of pretrial settlements the plaintiff obtains from other defendants allegedly liable for the tort. (See *Goodman v. Lozano*

4

(2010) 47 Cal.4th 1327, 1333; *Ehret v. Congoleum Corp.* (1999) 73 Cal.App.4th 1308, 1318 (*Ehret*).) "[L]ike a prevailing party who is entitled to costs, nonsettling defendants are entitled, as a matter of right, to reduce their liability to a plaintiff in the amount of credit provided by section 877." (*Wade v. Schrader* (2008) 168 Cal.App.4th 1039, 1046 (*Wade*).)

The purpose of the statute is to assure "equitable sharing of damages" and to assure " 'a plaintiff will not be enriched unjustly by a double recovery, collecting part of his total claim from one joint tortfeasor and all of his claim from another.' " (*County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 544; accord, *Wade, supra,* 168 Cal.App.4th at p. 1046.)

The Tuttles maintain Medical Center waived or forfeited its right to setoff under section 877 when it (a) stipulated Medical Center, alone, and no other party, was liable for Jack Tuttle's injuries, (b) failed to object to recordation of the jury verdict and entry of judgment without setoff, and (c) employed a postjudgment section 663 motion to vacate to obtain a setoff. None of these assertions has merit.

### *Medical Center Did Not Stipulate Away Its Right to Setoff*

The obvious purpose of the parties' stipulation concerning liability was to frame the issue to be tried for the jury (i.e., damages only), to prevent the jury from engaging in any speculation about the liability of other parties, and to foreclose the jury from making any apportionment of damages based on such speculation. The stipulation, in short, had nothing to do with setoff and did not constitute a knowing relinquishment by Medical Center of its right to setoff under section 877. (See *People v. Cunningham* (2015) 61 Cal.4th 609, 633 [waiver requires a knowing relinquishment of a right]; *Neubauer v. Goldfarb* (2003) 108 Cal.App.4th 47, 57 [same].) Moreover, when the court and counsel discussed the stipulation prior to trial, defense counsel made a special point of reserving Medical Center's right to setoff. And after the trial court made it clear Medical Center was not at risk of waiving such claim, the Tuttles's counsel agreed the stipulation would

5

not preclude application of section 877.[3] Thus, there is no basis to the Tuttles's claim Medical Center stipulated away its statutory right to setoff.

### *Medical Center Did Not Forfeit Its Right to Setoff by Not Objecting When the Verdict Was Recorded and Judgment Was Entered*

Promptly on rendition of the verdict, the trial court directed that it be recorded and judgment be entered. That Medical Center did not, at that moment in time, raise its right to setoff did not waive or forfeit its statutory rights.

Section 877 contains no requirement that a nonsettling defendant interpose an "objection" when judgment is promptly entered on a jury verdict, as is often the case. Nor do we see any reason to impose such a requirement. (See *Wade, supra,* 168 Cal.App.4th at p. 1048 [defendant did not waive right to section 877 setoff by "failing to bring it to the attention of the arbitrator [who tried the case] or the court [which confirmed the award] before judgment was entered].)

In any event, Medical Center did raise its right to setoff prior to entry of judgment, in connection with the parties' stipulation on liability. The issue of setoff was, thus, clearly in play, and the Tuttles cannot claim to have been prejudiced in any way by the fact Medical Center did not "object" when, upon return of the verdict, the trial court promptly directed its recordation and entry of judgment.

---

[3] Although Medical Center quoted these discussions in its respondent's brief, the Tuttles in their reply brief not only ignored the record, but obstinately and incorrectly continued to insist Medical Center made no "effort to preserve" its "rights" under section 877. It ill behooves any party on appeal to ignore or misstate what plainly appears in the record. (See *Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 557 [imposing sanctions in part because litigant "brazenly misrepresented the record and/or obscured facts"].)

6

***Medical Center Did Not Forfeit Its Right to Setoff Under Section 877 by Making a Motion to Vacate Under Section 663***

The Tuttles's assertion that Medical Center used the wrong procedural device—a motion to vacate under section 663—to secure a setoff under section 877 is as lacking in merit as their other forfeiture claims.

As the appellate court observed in *Wade*, "no statute spells out how to claim a section 877 settlement credit such as there is for claiming costs." (*Wade*, *supra*, 168 Cal.App.4th at p. 1047.) It is therefore not surprising "[t]he cases show that the procedure for applying a section 877 settlement credit varies." (*Ibid.*)

In some cases, the jury has been "given the evidence of a settlement and a special verdict form by which it considers the prior settlement in calculating the verdict." (*Wade, supra*, 168 Cal.App.4th at p. 1048, citing *Syverson v. Heitmann* (1985) 171 Cal.App.3d 106, 110–111 (*Syverson*).) In other cases, "where entitlement to and the amount of the settlement credit is not in dispute, the nonsettling defendant may raise the issue after the verdict but before judgment so that the trial court may calculate the judgment with settlement credit in mind." (*Wade, supra,* 168 Cal.App.4th at p. 1048, citing *Albrecht v. Broughton* (1970) 6 Cal.App.3d 173, 177–178 & *Syverson, supra,* 171 Cal.app.3d at p. 111.)

In still other cases, courts have entertained postjudgment motions for setoff, including motions to vacate brought under section 663, and have applied section 877 setoffs by way of amending the judgment. (*Wade, supra,* 168 Cal.App.4th at p. 1048 citing *Deocampo v. Ahn* (2002) 101 Cal.App.4th 758, 766, 768 [postjudgment motion for "a section 877 setoff," followed by "amended judgment"] and *Wilson v. John Crane, Inc.* (2000) 81 Cal.App.4th 847, 851 [setoff reflected in amended judgment]; see also, e.g., *Hellam v. Crane Co.* (2015) 239 Cal.App.4th 851, 857–858 [postjudgment "motion to apply settlement credits," followed by "amended judgment" entered 10 months after entry of original judgment]; *Gray v. Begley* (2010) 182 Cal.app.4th 1509, 1512–1513,

1515, 1526 [after the defendant withdrew postjudgment motion "to vacate the judgment under . . . sections 663 and 473" to obtain section 877 setoff, pursuant to a seemingly collusive agreement with the plaintiff, insurer was entitled to intervene and file "its own motion to vacate the judgment and apply the setoff"]; *Ehret, supra*, 73 Cal.App.4th at pp. 1314–1315, 1317 [one defendant filed postjudgment "motion to vacate or modify judgment pursuant to . . . section 663" and motion for new trial seeking, *inter alia*, setoff for pretrial settlements and another defendant filed motion to vacate also raising issue; trial court entered judgment notwithstanding the verdict reflecting setoff ]; *Reed v. Wilson* (1999) 73 Cal.App.4th 439, 442 (*Reed*) [postjudgment motion to "set aside and/or correct the judgment to reflect the section 877 offset," judgment subsequently reduced "to zero"]; *Poire v. C.L. Peck/Jones Brothers Construction Corp.* (1995) 39 Cal.App.4th 1832, 1836 [postjudgment motion "to set aside the judgment (§§ 663, 663a)" on multiple grounds, including that the defendant "was entitled to a setoff . . . under section 877"].)

The specific issue in *Wade* was whether the defendant could obtain a setoff for a settlement reached before rendition of the arbitration award, by way of seeking, after the award was confirmed and reduced to a judgment, an order compelling the plaintiff to execute a satisfaction of judgment under section 724.050, subdivision (d). Given the lack of any specific procedural device to obtain a section 877 setoff, the courts' historical flexibility as to how the issue of setoff is presented, and the lack of any triable issue as to the defendant's right to setoff, the *Wade* court had no difficulty concluding the postjudgment motion to compel acknowledgement of satisfaction of the judgment was "an entirely acceptable procedure." (*Wade, supra,* 168 Cal.App.4th at pp. 1048–1049.)

We reach the same conclusion for the same reasons with respect to Medical Center's use of a postjudgment motion to vacate under section 663 to secure a setoff under section 877. The motion was timely filed and fully apprised the trial court and plaintiffs of Medical Center's statutory claim. The motion was also timely heard and ruled on by the trial court while the court had jurisdiction to alter the judgment under

8

section 663. (See *Ehret, supra,* 73 Cal.App.4th at p. 1317 [discussing trial court's jurisdiction to rule on posttrial section 663 motion to vacate and enter new judgment reflecting section 877 setoff].) Any other conclusion, moreover, would "give[] [the Tuttles] the double recovery section 877 was designed to prevent." (*Wade, supra,* 168 Cal.App.4th at p. 1048.)

In sum, the trial court did not err in rejecting the Tuttles's multifarious waiver and forfeiture arguments.

### *Section 877 Settlement Setoffs Are Not Subject to Reduction Under the "Common Fund" Doctrine*

The Tuttles alternatively contend that even if Medical Center properly employed a postjudgment motion to vacate to obtain a setoff for the prejudgment settlements, the trial court should have reduced the amount of the setoff under the "common fund" doctrine. Specifically, the Tuttles claim the setoff should have been reduced by the amount of attorney fees and expenses they incurred in obtaining the settlements. They view the settlements, in other words, as a common fund benefiting not only themselves, but also Medical Center. As we explain, the plain language of section 877 does not allow for such a deduction from a setoff. Nor do the salient features of the common fund doctrine support such a deduction.

The common fund doctrine is an "exception" to the longstanding "American" rule requiring parties to pay their own attorney fees unless a statute or contract provides otherwise. (§ 1021; *Quinn v. State of California* (1975) 15 Cal.3d 162, 167 (*Quinn*); *Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1257.) This exception has, moreover, "become as well established as the rule itself: that one who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs." (*Quinn, supra,* 15 Cal.3d at p. 167.)

9

However, as its description portends, the doctrine has largely been developed and applied in the context of class and representative actions—cases in which passive beneficiaries share a unity of interest and purpose. (See *21st Century Ins. Co. v. Superior Court* (2009) 47 Cal.4th 511, 520 ["The common fund doctrine originated in the class action context," growing to allow reimbursement to insureds in insurance subrogation cases in the 1960s and 1970s]; *City and County of San Francisco v. Sweet* (1995) 12 Cal.4th 105, 117 (*Sweet*) ["In common fund cases the litigation has been undertaken in contemplation that a fund will be created that will confer a benefit on a *class* of beneficiaries with a *common interest in the benefit obtained.*"], italics added; *Fox v. Hale & Norcross Silver Mining Co.* (1895) 108 Cal. 475, 477 [shareholder derivative action]; John P. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds* (1974) 87 Harv. L. Rev. 1597, 1601 [discussing doctrine's origins].)

As far as our research discloses, the common fund doctrine has never even been alluded to, let alone applied, in determining the amount of a setoff under section 877 for a prejudgment settlement. Nor is this surprising given the plain language of the statute.

Section 877 provides in relevant part that a prejudgment settlement "shall have the following effect: [¶] (a) . . . it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is greater." (§ 877, subd. (a).) This statutory language is plain—it directs that a setoff "shall" be given for the "greater" of the amount stipulated or the consideration paid for the settlement. Thus, the language is not only mandatory, but it also provides that the setoff is to be for the greater amount associated with the settlement.

The statute makes no provision for reducing the setoff otherwise required under subdivision (a) by the plaintiff's attorney fees and costs incurred in procuring the settlement. Undoubtedly, the Legislature could have provided for such an adjustment, but it did not, and there are several reasons why this might be so. One could be the vast

10

differences in fees and costs between cases; another could be the desire for a more streamlined process that focuses on the settlement for which setoff is sought and does not get bogged down in disputes over the reasonableness of fees and costs incurred in reaching it; yet another could be the desire to retain the "American" rule in this context. In any case, it is not our role to read into section 877 a reduction in the setoff for a pre-verdict settlement otherwise mandated by the statute. (See *Great Western Bank v. Converse Consultants, Inc.* (1997) 58 Cal.App.4th 609, 613 [courts should not generally engraft provisions onto statutes]; see also *Reed, supra,* 73 Cal.App.4th at pp. 444–445 [because section 877 speaks only of "claims," there is no reduction from setoff for cost awards]; *In re Gorina* (Bankr. C.D. Cal. 2002) 296 B.R. 23, 28 [no reduction from setoff against costs, including attorney fees]; *Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 750 [because wording of section 877 is "clear and unambiguous" and speaks only of prejudgment settlements, there is no setoff for postjudgment settlements].)

The Tuttles correctly point out that a credit against a recovery from a third party for workers' compensation benefits is reduced by the amount of attorney fees incurred in obtaining the recovery. But this credit is controlled by a different set of statutes that are part of the Workers' Compensation Act, Labor Code sections 3856 and 3860. As part of the no-fault compensation provided for by this Act, an insurer that pays benefits on behalf of an employer has a lien against any recovery against a third party. (Lab. Code, §§ 3852, 3856, subd. (b); see generally *Fremont Comp. Ins. Co. v. Sierra Pine* (2004) 121 Cal.App.4th 389, 396.) The Act expressly provides that the amount of such lien excludes fees and costs incurred by an employee in obtaining the recovery. (Lab. Code, § 3856, subd. (b); see generally *Summers v. Newman* (1999) 20 Cal.4th 1021, 1031, 1033 (*Summers*); *Luque v. Herrera* (2000) 81 Cal.App.4th 558, 562–563.) Thus, unlike section 877 governing settlement offsets, the Workers' Compensation Act has language effectively adopting the common fund doctrine in its lien credit provisions. (*Summers, supra,* 20 Cal.4th at pp. 1030–1031.) The rationale for this was explained in *Summers* as

11

follows:  "[T]he employer and the employee" are seen "as having equivalent claims against the third party," and "their relationship may aptly be compared to cobeneficiaries under a will seeking to recover an amount owed to the estate."  (*Summers*, *supra*, 20 Cal.4th at p. 1031.)  In other words, as against a third party, an employee and employer (who, under the Act, is not subject to suit), have like interests and are seeking a common recovery, thus making the common fund doctrine sensibly and fairly applicable.

The same cannot be said, however, as to the third party sued by the employee (and effectively sued by the employer and its workers' compensation insurer holding the lien to recoup the benefits paid).  In the typical tort lawsuit, like this one, the third party defendant and employee plaintiff are in an entirely adversarial position, and cannot sensibly be viewed as cobeneficiaries seeking the recovery of a fund in which they have a common interest.  (Compare *City and County of San Francisco v. Sweet* (1995) 12 Cal.4th 105, 117 [in contrast to a common fund case undertaken for a "class of beneficiaries" is "a personal injury tort action is undertaken for the benefit of the injured plaintiff"]; 1 Rossi, Attorneys' Fees (3d ed. 2015) § 7:7 ["[i]t has been held that the principle allowing an attorney his fee out of a common fund which his services have created, increased, or protected does not apply in ordinary adversary proceedings"].)  Also, it has been said the common fund doctrine exists to spread costs amongst the *winners* of a lawsuit and should not impact a losing defendant.  (See *New Mexico Right to Choose/NARAL v. Johnson* (1999) 127 N.M. 654, 660 ["a losing litigant is no better or worse off as a result" of common fund doctrine]; *Wisconsin Retired Teachers Assn. v. Employee Trust Funds Bd.* (1997) 207 Wisc.2d 1, 38 [same].)  In short, an injured employee's action against a third party is a quintessential tort action that falls outside the common fund doctrine but squarely within the provisions of section 877, which does not, as we have explained, incorporate that doctrine.

12

Accordingly, the trial court did not err in refusing to reduce the section 877 prejudgment settlement setoffs under the common fund doctrine and denying the Tuttles's motion to further amend the judgment.

***The Trial Court Properly Determined the Amount of the Workers' Compensation Credit***

Liberty Insurance Corporation duly filed notice of a lien against any judgment the Tuttles might recover for $216,178.57 in workers' compensation benefits paid through June 2011, plus "any additional sums that may be paid." It subsequently filed a complaint in intervention, which Medical Center resolved by purchasing the lien for $375,000. Liberty, thus, settled its risk of recovery, and Medical Center took on the risk of satisfaction of the lien. The lien ultimately had an actual value of $625,520.67. After entry of judgment, the trial court, upon the Tuttles's motion, deducted 40 percent of the value of the lien ($250,208.26) pursuant to Labor Code section 3856 to account for the Tuttles's reasonable attorney fees, resulting in a workers' compensation credit against the judgment of $375,312.41. Believing the credit to be too high, the Tuttles moved to further amend the judgment, claiming their litigation costs were higher. The trial court viewed the motion as one for reconsideration and denied it on the ground the Tuttles failed to present any new evidence warranting reconsideration.

The Tuttles continue to attack the workers' compensation credit, claiming Medical Center failed to prove up the lien, any credit was limited to the numerical amount specified in the lien ($216,178.5) or, at most, the amount Medical Center paid for it ($375,000), and the trial court should have further reduced the credit to account for their additional claimed litigation costs. None of these assertions have merit.

The workers' compensation lien was not for a fixed amount. Rather, it was for the value of the benefits paid to the date of the notice, plus "any additional sums that may be paid." It is often not possible for an insurer to know the total amount of workers' compensation at the time of filing a lien notice. Nor is it reasonable or practical to

13

require a workers' compensation lien holder to file an amended notice every time there is a payout of additional benefits—ergo, the provision in the notice for "any additional sums that may be paid." Indeed, it would be a waste of time and resources to require additional filings, since the employee knows the amount benefits he or she receives. It would also be contrary to practice. (See *Herr v. Workers' Comp. Appeals Bd.* (1979) 98 Cal.App.3d 321, 327 [similar "language of the notice of lien was meant to keep the lien current with benefits paid after the notice of lien was first filed"].)

There was also ample evidence Jack Tuttle received at least $625,520.67 in workers' compensation benefits. Liberty's counsel, in a declaration submitted to support Medical Center's motion for credit, stated the insurance company paid over $500,000 in medical benefits and over $190,000 in disability benefits (i.e., over $690,000). Additionally, in posttrial argument, counsel for the Tuttles admitted to previously stipulating to the $625,520.67 amount sought. Thus, the record suffices to support the lien. (See *State Farm Mutual Automobile Ins. Co. v. Huff* (2013) 216 Cal.App.4th 1463, 1470 [lien must be proved].)

The price Medical Center paid Liberty for the lien to resolve the complaint-in-intervention—$375,000—is immaterial. This number simply reflects Liberty's and Medical Center's, respective, risk assessments as to whether the lien would be satisfied and the dollar figure satisfying Liberty's desire to close its books on the litigation. (See *Quinn v. Warnes* (1983) 144 Cal.App.3d 309, 318 (*Quinn*) ["Although, in retrospect, defendant and U.S.A.A. made an advantageous arrangement with El Dorado, at the time the lien was purchased its value was speculative. Nor was there any certainty that there would be a judgment against which the lien could be imposed."].) What matters in terms of the lien credit is the amount actually paid to the Tuttles, since the purpose of the credit is to prevent double recovery of workers' compensation benefits and damages. (See *Raisola v. Flower Street Ltd.* (1988) 205 Cal.App.3d 1004, 1008; *Hone v. Climatrol Industries, Inc.* (1976) 59 Cal.App.3d 513, 530; see also *Howell v. Hamilton Meats &*

14

*Provisions, Inc.* (2011) 52 Cal.4th 541, 566 [damages are what the plaintiff actually pays, not what the plaintiff might have been charged].) Indeed, the workers' compensation system is supported in part by the ability to recoup benefits paid from third parties who are responsible, in whole or in part, for the injury. (See *Quinn*, *supra*, 15 Cal.3d at p. 164.)

We are puzzled by the Tuttles's assertion in their opening brief that the trial court erred in not deducting additional litigation costs from the workers' compensation credit. The trial court reduced the credit by 40 percent and the Tuttles recovered their costs in large part as the prevailing parties in the case. Suffice it to say, the Tuttles are not entitled to recover costs twice, by way of a reduced workers' compensation credit and an approved bill of costs. In fact, they appear to have abandoned this point in their reply brief, making no mention of it. In any case, to the extent Medical Center successfully moved to tax costs, we address the merits of the court's ruling in the next section of this opinion. And to the extent the Tuttles challenge the trial court's conclusion that they failed to present evidence of additional costs, there was no evidence of additional costs.

**The Trial Court Did Not Err in Its Cost Rulings**

### Expert Fees and Prejudgment Interest Under Code of Civil Procedure Section 998 and Civil Code Section 3281

Section 998 provides that if the defendant rejects a settlement offer from the plaintiff and "fails to obtain a more favorable judgment . . . , the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover postoffer costs of the services of [plaintiff's] expert witnesses . . . in addition to plaintiff's costs." (Code Civ. Proc., § 998, subd. (d).) Civil Code section 3291 provides that if "the plaintiff makes an offer pursuant to Section 998 . . . which the defendant does not accept . . . and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the

judgment, and interest shall accrue until the satisfaction of judgment." (Civ. Code, § 3291.)

Before trial, the Tuttles served Medical Center with two section 998 offers. The first, in August 2013, offered to settle Jack Tuttle's claims for $1.8 million and Megan Tuttle's, for $98,000. The second, in May 2014, significantly increased these numbers, offering to settle Jack Tuttle's claims for $4.35 million and Megan Tuttle's, for $350,000. Medical Center rejected both offers. The jury returned a verdict in between the two offers: it awarded Jack Tuttle $2,476,378.86 and Megan Tuttle $150,000. Thus, Medical Center failed to obtain a more favorable judgment than the Tuttles's 2013 offer, but did obtain a considerably more favorable judgment than their 2014 offer.

After trial, the Tuttles unsuccessfully sought to recover expert witness fees and prejudgment interest. On appeal, they continue to maintain they can recover these costs under Code of Civil Procedure section 998 and Civil Code section 3291 in light of their first section 998 offer and regardless of the fact they recovered markedly less than their second offer.

A similar series of events unfolded in *Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, 387 (*Wilson*), where the plaintiff won judgment of $175,000, a figure between her first offer of $150,000 and her second offer of $249,000. The appellate court held the "second statutory offer extinguished the first" and therefore the plaintiff could not recover expert witness fees under section 998. (*Id.* at p. 392.) Nor could the plaintiff recover prejudgment interest, because she had not satisfied "the prerequisite to the application of section 3291—in that she did not obtain a more favorable judgment than her compromise offer." (*Id.* at p. 393.) As the *Wilson* court explained:

> "A plaintiff might be encouraged to maintain a higher settlement demand on the eve of trial and refuse to settle a case that should otherwise be settled if the plaintiff finds comfort in the knowledge that, even if the plaintiff receives an

16

award less than his or her last demand, the plaintiff might still enjoy the cost reimbursement benefits of section 998 so long as the award exceeded a lower demand made by the plaintiff sometime during the course of the litigation. The reverse might be true of the defendant. 'Rolling the dice' then becomes somewhat less risky and we note that lawsuits are not often settled by reducing the risk of trial.

"Furthermore, there is some dissembling in Wilson's argument that we are reluctant to endorse. On the eve of trial she was unwilling to save the parties and the trial court the cost of trial for anything less than $249,000, yet she now asks to be reimbursed '998' costs as if she would have been willing to do so for $150,000. While we do not suggest impropriety, such fictions tend to undermine respect for our system of justice." (*Wilson*, *supra*, 72 Cal.App.4th at p. 391.)

The Tuttles cite *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014 (*Martinez*), as undermining the "last offer" rule of *Wilson*. *Martinez*, however, addressed a distinctly different situation—where a "plaintiff made two statutory offers, and defendant failed to obtain a judgment more favorable than *either*." (*Martinez*, at p. 1026, italics added.) Moreover, the court expressly refused to reject *Wilson*, stating "for present purposes we may assume the propriety of applying the last offer rule where, as in . . . *Wilson*, an offeree obtains a judgment or award less favorable than a first section 998 offer but more favorable than the later offer." (*Ibid.*)

There is, accordingly, no merit to the Tuttles's assertion the trial court erred in denying expert fees and prejudgment interest under Code of Civil Procedure section 998 and Civil Code section 3291.

### *Trial Technology Costs*

The Tuttles sought as court costs $65,119.08 for "Fees to Executive Presentation for: trial technology, trial video/computer presentation, power point presentation, depositions (including videotape and deposition synchronization), cost of trial technician and related costs." At the hearing on Medical Center's motion to tax, the Tuttles increased this cost item to over $70,000 and provided a supplemental declaration with bills from Executive Presentation.

17

The trial court taxed this entire cost item, ruling these expenses were "merely beneficial" and not "reasonably necessary" as required under section 1032. As the trial court saw it, the Tuttles provided no evidence showing the purpose for spending the more than $70,000 or how it was necessary to their case at trial. While the trial court observed their use of technology was helpful, kept the trial moving, and at times even provided a benefit to Medical Center, it was not, in the trial court's estimation, a necessary expense.[4]

"Under Code of Civil Procedure section 1032, the prevailing party is entitled as a matter of right to recover costs. Section 1033.5 identifies cost items that are allowable under section 1032 (§ 1033.5, subd. (a)); identifies items that are not allowable (*id.*, subd.(b)); and further provides that '[i]tems not mentioned in this section . . . may be allowed or denied in the court's discretion' (i*d.*, subd. (c)(4)). Any allowable costs must be 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation,' and reasonable in amount. (§ 1033.5, subd. (c)(2), (3).)" (*Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 989–990 (*Bender*).)

"The standard of review applicable to a cost order depends on the issue raised on appeal. When the question is whether a claimed cost comes within the general cost statutes and is recoverable at all, the question is one of statutory interpretation, subject to de novo review. . . . Whether a cost item was reasonably necessary to the litigation, however, ' " 'presents a question of fact for the trial court and its decision is reviewed for abuse of discretion.' " ' " (*Coalition for Adequate Review v. City and County of San Francisco* (2014) 229 Cal.App.4th 1043, 1050–1051.)

---

[4] The Tuttles point out that the trial court's ruling alternates between the language of "reasonably necessary" and "necessary." As noted below, the costs statute uses the term "reasonably necessary." The trial court's ruling, which thoroughly discussed the law, shows it knew the appropriate legal standard, and we presume the trial court applied that standard despite the occasional use of shorthand. (See *Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563.)

Here, the Tuttles apparently agree they are seeking costs which are neither mandatory nor prohibited,[5] and thus are awardable in the trial court's discretion if reasonably necessary to the conduct of the litigation.  (See, e.g. *Green v. County of Riverside* (2015) 238 Cal.App.4th 1363, 1374 (*Green*) [affirming award of trial technician cost under this framework]; see also *Bender*, *supra*, 217 Cal.App.4th at pp. 989–990 [also affirming award of trial technology costs].)  "Where costs are not expressly allowed by the statute, the burden is on the party claiming the costs to show that the charges were reasonable and necessary . . . ."  (*Foothill-De Anza Community College Dist. v. Emerich* (2007) 158 Cal.App.4th 11, 29; *Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 776 [reversing award of local travel costs when "[t]he declaration of CSAA attorney Joseph Hunsader failed to demonstrate how any of these charges were necessary to conduct the litigation, as opposed to being merely convenient"].)

The problem for the Tuttles on appeal is the deferential abuse of discretion standard of review and the evidentiary burden they bore as the party seeking a discretionary cost award.  While several appellate opinions have affirmed awards of trial technology costs (e.g., *Green*, *supra*, 238 Cal.App.4th at p. 1374; *Bender*, *supra*, 217 Cal.App.4th at pp. 989–990; *El Dorado Meat Co. v. Yosemite Meat & Locker Service, Inc.* (2007) 150 Cal.App.4th 612, 619–620), another affirmed a trial court's denial of such costs (*Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095, 1105 (*Science Applications*).)  The Tuttles point to no decision *reversing* a denial of such costs.

---

[5] For example, they do not argue these costs fall under any provision of section 1033.5, subdivision (a), such as models, enlargements of exhibits, or photocopies of exhibits (§ 1033.5, subd. (a)(13)).  Nor do they argue for the application of subdivision (a)(3), regarding video recording depositions.

19

Contrary to the Tuttles's assertion, it was not inconsistent for the trial court to compliment their use of technology, but deny costs on the ground the technology was merely "beneficial" and not "reasonably necessary." The court, in fact, went to some lengths in its order taxing the costs to explain why there was no basis for the Tuttles's suggestion they were entitled to such costs and why it did not perceive the claimed costs as being anything more than "beneficial" and not falling on the "reasonably necessary" and compensable side of the line. To be sure, "use of technology in the courtroom has become commonplace" in certain cases (*Bender*, *supra*, 217 Cal.App.4th at p. 991), but trial technology costs remain off the statutory list of costs allowed as a matter of right and remain a matter for the trial court's discretion. We cannot say the trial here abused its discretion in viewing the expenses as not reasonably necessary and not recoverable under section 1032. (See *Science Applications*, *supra*, 39 Cal.App.4th at p. 1105 [affirming trial court's view of trial technology used in that case as beneficial, not necessary].)

## DISPOSITION

The amended judgment and posttrial orders are affirmed. Respondent to recover its costs on appeal.

20

_____
Banke, J.

We concur:

_____
Humes, P. J.

_____
Dondero, J.

A144759, *Tuttle v. Ukiah Adventist Hosp.*