Filed 7/8/21  City of LA v. PricewaterhouseCoopers CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| CITY OF LOS ANGELES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br> PRICEWATERHOUSECOOPERS, LLP,<br><br>    Defendant and Appellant. | B305583<br><br>(Los Angeles County<br>Super. Ct. No. BC574690) |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed in part, reversed in part and remanded.

Gibson, Dunn & Crutcher, Casey J. McCracken and Daniel J. Thomasch for Defendant and Appellant.

Office of the City Attorney, Michael N. Feuer, Kathleen A. Kenealy, Joseph A. Brajevich; Brown George Ross O'Brien Annaguey & Ellis, Eric M. George, Maribeth Annaguey and Kim S. Zeldin for Plaintiff and Respondent.

———————————

Defendant and appellant PricewaterhouseCoopers LLC appeals from an order granting a motion to tax costs after plaintiff and respondent City of Los Angeles voluntarily dismissed a contract action with prejudice. The trial court taxed costs for electronic discovery and travel by out-of-town attorneys to attend local depositions and hearings. On appeal, Pricewaterhouse contends: (1) the trial court erroneously believed electronic discovery costs were not recoverable under Code of Civil Procedure section 1033.5,[1] and (2) the trial court abused its discretion by taxing all travel costs for counsel based in New York. We conclude that no abuse of discretion has been shown with respect to travel costs. We cannot presume in this case that the trial court understood the scope of its discretion to award electronic discovery costs in light of the City's primary argument below that such costs are never recoverable and an indecipherable statement in the transcription of the trial court's ruling. Therefore, we reverse in part with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

Pricewaterhouse entered into a contract with the City in 2010 to modernize the billing system for the Los Angeles Department of Water and Power. Using new billing software introduced in 2013, the City failed to accurately bill a portion of its customers. The City filed an action against Pricewaterhouse in March 2015, alleging that Pricewaterhouse fraudulently induced the City to enter into the contract and breached the

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

2

contract.  On September 26, 2019, after four and a half years of litigation, the City voluntarily dismissed the case with prejudice.

On October 21, 2019, Pricewaterhouse filed a memorandum of costs.  Among other items, Pricewaterhouse sought reimbursement of $379,027.86 for deposition costs, $67,596.46 for travel costs related to hearings, and $1,087,812.63 for electronic discovery costs.  The electronic discovery costs were listed for each of five years from 2015 through 2019 with amounts for processing/loading, hosting, and production of documents.

The City filed a motion to strike or tax costs, including the costs of $169,263.24 attributed to travel to depositions, $67,596.46 for travel to hearings, and $1,087,812.63 for electronic discovery.  The City argued that although out-of-town deposition travel was recoverable when reasonably necessary to the litigation and reasonable in amount, the travel expenses for Pricewaterhouse's New York-based counsel were unnecessary because the lawsuit was filed and the witnesses were deposed in Los Angeles.  There were no depositions taken out-of-town, and qualified local counsel was available.  Pricewaterhouse's counsel maintained an office in Los Angeles with more than 200 attorneys, many of whom attended or conducted several of the depositions.  In addition, the expenses for the travel and lodging were excessive.  It was not reasonably necessary for a second or third out-of-town attorney to travel to attend depositions, when highly qualified and knowledgeable local counsel was available.

The City additionally argued that travel expenses to attend court hearings were not recoverable under California law.  The travel costs were not reasonably necessary to the conduct of the litigation, because Pricewaterhouse had highly qualified local

3

counsel of record, or out-of-town counsel could have appeared via CourtCall. The amounts were excessive as well.

Costs for electronic discovery, the City argued, were not recoverable as a matter of law under *Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095 (*Science Applications*). In *Science Applications*, the appellate court found it was an abuse of discretion to award costs for an outside vendor to provide document control and an internal case management database. The appellate court considered the expense of high-powered computer support to be similar to paralegal services or document retrieval and not recoverable. Based on *Science Applications*, the City argued that the court lacked discretion to award costs incurred by a litigant involving electronic methods of accessing information. Section 1033.5, subdivision (a)(15), expressly allows recovery of the costs of hosting electronic documents through an electronic filing service provider only if required or ordered by the court, and no other provision of California law provides for the automatic recovery of electronic discovery costs by a prevailing party.

Pricewaterhouse filed an opposition to the motion to strike or tax costs on November 21, 2019. Pricewaterhouse argued that costs for travel to court hearings were within the court's discretion to award, because they were not expressly allowed or disallowed by the cost statute. Pricewaterhouse also argued that the deposition and hearing related travel expenses were reasonable and necessary. Pricewaterhouse's lead attorney Daniel Thomasch works in the New York office of the international law firm Gibson, Dunn & Crutcher LLP. Pricewaterhouse sought costs for 22 trips by its lead attorney to take depositions, 12 trips by his New York-based partner to take

4

depositions, and 14 trips by New York-based associates to sit as the second chair for depositions. In addition, Pricewaterhouse sought travel expenses for its lead attorney to attend 36 hearings, and for his New York-based partner to attend two hearings.

Pricewaterhouse also argued that it was within the trial court's discretion to award costs for electronic discovery, because the costs were not specifically listed in section 1033.5 as allowed or prohibited. Pricewaterhouse distinguished the costs of the internal case management system at issue in *Science Applications*, arguing that subsequent cases had narrowed or rejected the holding of *Science Applications*. Specifically, *El Dorado Meat Co. v. Yosemite Meat & Locker Service, Inc.* (2007) 150 Cal.App.4th 612, 620 (*El Dorado*), limited *Science Applications* to its facts by recognizing that the use of electronic litigation management was more expensive than traditional methods at the time it was decided, and *Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968 (*Bender*), rejected the argument that litigation technology costs are never recoverable. In addition, Pricewaterhouse argued that the trial court should exercise its discretion to award electronic costs in this case, because the use of electronic discovery vendors was indispensable to the litigation, provided services that could not be performed by a lawyer or paralegal, and the costs were reasonable.

Pricewaterhouse submitted the declaration of lead attorney Daniel Thomasch to support the necessity and reasonableness of electronic discovery costs. Thomasch explained that Pricewaterhouse employed one electronic discovery vendor from 2015 to 2019, and a different electronic discovery vendor beginning in February 2019. The parties had entered into an agreement governing electronic discovery. Pricewaterhouse could

5

not have complied with the agreement without an electronic discovery vendor and electronic discovery database. The agreement required documents to be produced electronically as an image file with accompanying text files containing searchable text. It also required files that allow the data to be read by a computer, so the receiving party could load them. Numerous metadata fields had to be produced with the documents, such as the custodian, author, and filename. The parties were also required to run algorithms to remove duplicate documents and "de-NIST," which removes system-generated files. The work required an electronic discovery database and a vendor who could perform the technical tasks. The documents in the case were primarily email and exports from computer systems and databases.

The first electronic discovery vendor that Pricewaterhouse hired had collected and loaded 1,284,636 documents into its database. Pricewaterhouse produced more than 280,000 documents during the course of the case, while the City and third parties produced 331,889 documents, all of which had to be processed, loaded into the database, and hosted so the attorneys could access them. The work could not be accomplished without an experienced electronic discovery vendor. After Pricewaterhouse engaged the second vendor, the City produced 719,398 documents.

The vendors had separated their costs into three categories: processing/loading, hosting, and productions. In certain limited respects, the work performed by the second vendor had duplicated work performed by the first because documents were hosted by both vendors, but Pricewaterhouse was not seeking reimbursement of costs paid to the second vendor for duplicated

6

work.  The tremendous volume of discovery was driven by the breadth of the City's allegations.  The City served 324 production requests and Pricewaterhouse agreed to apply 213 search terms to respond to the discovery requests, including searching for the word "defect" within five words of 177 specific defects.

The hosting charges were based on the amount of data and length of time that the data was hosted.  Thomasch declared that the electronic discovery costs were for the use of technology, such as servers to host data and a software database to facilitate access and review of documents, and for technical services, such as eliminating duplication, creating load files, and producing load files in accordance with the parties' agreement.  These are not services that a lawyer or paralegal can ordinarily perform.  The electronic discovery costs did not include costs for consulting, project management, forensics, or analytics.

The City filed a reply on December 3, 2019.  The City argued that California law prohibits recovery of electronic discovery costs, and the cases cited by Pricewaterhouse were not relevant to the issue.  In addition, the City argued that Pricewaterhouse failed to show the amount of its electronic discovery costs were reasonable.  The company had not produced any invoices for electronic discovery or explained the necessity of hiring a second electronic discovery vendor.  In addition, the City argued Pricewaterhouse had not shown attendance by out-of-town counsel at local depositions was reasonably necessary, rather than merely convenient or beneficial to the litigation.  Pricewaterhouse was free to retain any counsel it chose and pay for any level of travel costs, but Pricewaterhouse could not require the City to pay for travel costs that were not reasonably

7

necessary and not reasonable in amount. The City also argued recovery is not permitted for the costs to travel to hearings.

A hearing was held on the motion to strike or tax costs on December 19, 2019. The City argued again that the costs of electronic discovery were not allowed under California law, and in addition, Pricewaterhouse had not shown the amount being sought was reasonably necessarily incurred. There were no invoices, they used two companies, and the costs were excessive. Similarly, Pricewaterhouse's travel costs were unnecessary, excessive, and not recoverable, including fully refundable first class and business class tickets. If the court were inclined to award travel costs, the City requested that the amounts be reduced to reasonable amounts.

Pricewaterhouse argued that the electronic discovery costs were not disallowed by the costs statute, and *Science Applications* had nothing to do with the costs at issue in this case. The electronic discovery services at issue were not similar to paralegal work. The electronic discovery work had been completed pursuant to an agreement between the parties which was submitted to the trial court, although that agreement was not signed by, nor were its provisions ordered by, the court. Pricewaterhouse noted that it had not sought reimbursement for certain activities by the electronic discovery vendor, such as reviewing or coding documents, and Pricewaterhouse was careful not to seek costs for duplicative efforts by the two vendors. In addition, Pricewaterhouse argued the travel costs were recoverable, necessary, and not excessive.

With respect to travel costs for depositions and court hearings, the trial court found Pricewaterhouse's counsel had an office in Los Angeles with many experienced attorneys. The court

8

did not find the cost of the travel was reasonably necessary to conduct depositions in Los Angeles. Therefore, the court excluded the amounts for travel costs and granted the motion to strike $169,263.62 for deposition-related travel and $67,596.46 for hearing-related travel.

In ruling on electronic discovery costs, the trial court summarized the holding of *Science Applications* as follows: "In that opinion the Court of Appeal stated that the cost related to document control data bases were not recoverable. The court reasoned that the document control data base charge, for example, represents the state's expenditure for an outside firm to keep track of the voluminous records in the case, that is, to Bate[s] stamp the documents, [input] them for retrieval, maintain a document library, [and create searchable data bases.] The expense is the cost of hiring assistants to help counsel organize documents and access them in discovery and at trial, in other words, the cost of high-tech paralegals."

The court noted, "Pricewaterhouse argues that [the *Science Applications*] case was very fact specific and did not hold that a court cannot as a matter of law exercise discretion in ordering electronic discovery costs. [¶] Pricewaterhouse also argues that *Science Application*[s] is a product of its time decided in an age before modern discovery."

The court acknowledged that *Science Applications* was decided at the beginning of the internet era, whereas modern businesses depend on computer technology services. "Nevertheless, the Legislature has not seen it necessary to amend the Code of Civil Procedure with regard to recovery of costs and electronic discovery. And the Court of Appeal has not addressed the issues after the *Science Applications* case. [¶] So it may be a

9

good time for the Court of Appeal to revisit the issue as far as recovery of costs for electronic discovery in view of the current state of affairs with regard to the conduct of modern litigation. [¶] Nevertheless, we're stuck with that case which is the existing case law and neither party has cited directly controlling authorities as to whether electronic discovery costs of a specific type which were incurred in this case are reasonably necessary for litigation. [¶] I know of no such authority. It is analogous to some of the matters that were raised in the *Science Applications* case."

The court ruled, "So based on the authority that has been cited in reliance on the case of *Science Application*[*s*], the court is going to exercise the discretion and high costs associated with electronic discovery in this case [*sic*]. And the court will grant the motion to strike costs related to electronic discovery."

On January 21, 2020, the trial court entered an order taxing the costs of airfare and lodging associated with deposition travel, the hearing related travel costs, and the costs of electronic discovery. Pricewaterhouse filed a timely notice of appeal from the order, but characterized it as an order after a judgment under section 904.1, subdivision (a)(2).

## DISCUSSION

### Appealability

The City contends the order taxing costs is not appealable as an order following a judgment under section 904.1, subdivision (a)(2), because a voluntary dismissal is not an appealable judgment. The City is correct, but we conclude the

10

order is appealable as a judgment under section 904.1, subdivision (a)(1).

An appeal can be taken only from an appealable order or judgment, as provided by statute and developed in the case law. (*J.H. Boyd Enterprises, Inc. v. Boyd* (2019) 39 Cal.App.5th 802, 810; *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 384 (*Aixtron*).) Section 904.1 contains the general list of appealable judgments and orders in civil actions. Section 904.1, subdivision (a)(1) provides that an appeal may be taken from a judgment that is not interlocutory, except for specified interlocutory judgments. This provision incorporates the common law "one final judgment rule," which allows parties to appeal only from a final judgment that disposes of the entire action. (*Aixtron*, at p. 384.) Section 904.1, subdivision (a)(2) provides that an appeal may be taken from an order made after a judgment made appealable under subdivision (a)(1).

"'A judgment is the final determination of the rights of the parties in an action or proceeding.' (§ 577.) '[I]t is the substance and effect of an adjudication that is determinative, not the form of the decree. [Citation.] As a general test, an order constitutes the final determination of a case "where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree."' (*Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 801.)" (*Mesa Shopping Center-East, LLC v. O Hill* (2014) 232 Cal.App.4th 890, 898 (*Mesa*).) Pursuant to the one final judgment rule, an appellate court cannot review intermediate rulings until the final resolution of the case. (*Aixtron*, *supra*, 52 Cal.App.5th at p. 384.)

A voluntary dismissal is generally not considered an appealable judgment, because the dismissal is a ministerial

11

action of the clerk and not a judicial act. (*Mesa, supra*, 232 Cal.App.4th at p. 897.) As a result, the trial court's ruling on a motion following voluntary dismissal of the case is not considered to be an order made following a judgment. (*Id.* at pp. 897–898.)

An order taxing costs, however, is a final determination in itself and not interlocutory. (See *Mesa, supra*, 232 Cal.App.4th at p. 898 [order denying motion to vacate voluntary dismissal and award attorney fees constituted appealable final judgment]; *Gassner v. Stasa* (2018) 30 Cal.App.5th 346, 354–355 (*Gassner*) [order of costs after voluntary dismissal was appealable, agreeing with *Mesa*]; but see *Mon Chong Loong Trading Corp. v. Superior Court* (2013) 218 Cal.App.4th 87, 92 (*Mon Chong Loong*) [order taxing costs after nonappealable voluntary dismissal was not appealable, but appellate court exercised discretion to treat appeal as a petition for writ of mandate].)

We agree with *Mesa* and *Gassner* that an order taxing costs after the voluntary dismissal of the action is a final judgment, appealable under section 904.1, subdivision (a). The trial court's order constituted a final determination on the issue of costs in this case. It was not an interlocutory ruling, as it was not simply a necessary step in the determination of another issue. No issue was left for future determination. There is no danger of piecemeal disposition and multiple appeals from the same action, because the case has been dismissed with prejudice. The order will otherwise evade appellate review. In addition, review of the order taxing costs will not require review of the nonappealable voluntary dismissal.

Our conclusion that the order taxing costs is an appealable final judgment is consistent with the treatment of collateral final orders. The collateral order doctrine is an exception to the one

12

final judgment rule, allowing a direct appeal from a collateral final judgment or order even when issues remain for further determination. (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 418; *Aixtron, supra*, 52 Cal.App.5th at p. 387.) "When a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken. [Citations.] This constitutes a necessary exception to the one final judgment rule. Such a determination is substantially the same as a final judgment in an independent proceeding. [Citations.]" (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368.)

"'[T]he test is whether an order is "important and essential to the correct determination of the main issue." If the order is "a necessary step to that end," it is not collateral.' [Citation.]" (*Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 903–904.) "The interest that is served by the collateral order doctrine is the expeditious completion of appellate review, when that can be accomplished without implicating the merits of the underlying controversy. The collateral order doctrine also preserves appellate review when, without the invocation of this doctrine, appellate review would be foreclosed." (*Id*. at p. 904.)

An order taxing costs on appeal has been found to be appealable under the collateral order doctrine, even though the appellate court reversed the trial court's judgment and ordered a new trial. (*Krikorian Premiere Theatres, LLC v. Westminster Central, LLC* (2011) 193 Cal.App.4th 1075, 1083 [order taxing costs on appeal is independent of any determination of the merits, effectively final and immediately enforceable as to the

ancillary issue of costs on appeal, and could otherwise escape review entirely].)  Although there is disagreement in the case law as to whether the collateral order doctrine requires an order directing the payment of money or performance of an act, assuming it is required, the *Krikorian* court found no meaningful difference between an order awarding costs and an order denying a motion to tax costs, in whole or in part.  (*Id.* at p. 1084 [persuasively disagreeing with *Barnes v. Litton Systems, Inc.* (1994) 28 Cal.App.4th 681, 682–685].)

We conclude the order taxing costs is an appealable final judgment in this case.  Even if the appeal were not properly before us, however, we would exercise our discretion to treat the appeal as a petition for writ of mandate.  (*Mesa*, *supra*, 232 Cal.App.4th at p. 899; *Mon Chong Loong, supra,* 218 Cal.App.4th at p. 92.)

**<u>Statutory Scheme and Standard of Review</u>**

Section 1033.5 sets forth the items of costs that a prevailing party is entitled to recover under subdivision (a).  (*Doe v. Los Angeles County Dept. of Children & Family Services* (2019) 37 Cal.App.5th 675, 693.)  Recoverable costs include, for example, filing fees, travel expenses to attend depositions, and attorney fees when authorized by contract or law.  (§ 1033.5, subd. (a)(1), (3) & (10).)  In 2016, the Legislature added to the list of recoverable costs the fees for hosting electronic documents if a court orders a party to have documents hosted by an electronic filing service provider, although this provision will become inoperable on January 1, 2022.  (§ 1033.5, subd. (a)(15); Stats. 2016, ch. 461, § 2.)

14

Costs that are prohibited are listed under section 1033.5, subdivision (b).  (*Doe v. Los Angeles County Dept. of Children & Family Services, supra,* 37 Cal.App.5th at p. 693.)  These include, for example, investigation expenses in preparing for trial, postage costs, telephone charges, and photocopying expenses other than exhibits.  (§ 1033.5, subd. (b)(2) & (3).)

Items that are not expressly listed in subdivision (a) or (b) are recoverable in the court's discretion.  (§ 1033.5, subd. (c)(2).)  All costs awarded must be "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation" (§ 1033.5, subd. (c)(2)) and "reasonable in amount" (§ 1033.5, subd. (c)(3)).

"Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion.  [Citation.]" (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774 (*Ladas*).)  Under the abuse of discretion standard, we review the trial court's findings of fact for substantial evidence and its conclusions of law de novo, but its application of the law to the facts will not be disturbed unless the trial court exercised its discretion in such an irrational or arbitrary manner that no judge would reasonably make the same order under the circumstances.  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773; *Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1100; *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 479–480.)

"However, because the right to costs is governed strictly by statute [citation] a court has no discretion to award costs not statutorily authorized.  [Citations.]" (*Ladas, supra,* 19 Cal.App.4th at p. 774.)  An abuse of discretion is shown when the

trial court acted on a mistaken view about the scope of its discretion (*Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 285) or failed to exercise its discretion (*Sanford v. Rasnick* (2016) 246 Cal.App.4th 1121, 1133).

"Normally, we must presume the trial court was aware of and understood the scope of its authority and discretion under the applicable law. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114 ['[W]e apply the general rule "that a trial court is presumed to have been aware of and followed the applicable law."']; *McDermott Will & Emery, LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103 ['We presume the trial court knew and properly applied the law absent evidence to the contrary.']; *Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 741 ['"It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties."'].) This rule derives in part from the presumption of Evidence Code section 664 "that official duty has been regularly performed."' (*People v. Stowell*, at p. 1114.) The rebuttable presumption under section 664 ""affect[s] the burden of proof' (Evid. Code, § 660), meaning that the party against whom it operates . . . has 'the burden of proof' as to the nonexistence of the presumed fact. (Evid. Code, § 606 . . . .)"' (*In re Raphael P.* (2002) 97 Cal.App.4th 716, 738.)" (*Barriga v. 99 Cents Only Stores* (2020) 51 Cal.App.5th 299, 333–334 (*Barriga*).)

"If the record demonstrates the trial court was unaware of its discretion or that it misunderstood the scope of its discretion under the applicable law, the presumption has been rebutted, and the order must be reversed. (See *Noel* [*v. Thrifty Payless, Inc* (2019)] 7 Cal.5th [955,] 968 ['"[A]n order based upon improper

16

criteria or incorrect assumptions calls for reversal "'even though there may be substantial evidence to support the court's order.'"'"].) "'[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." [Citations.] Therefore, a discretionary decision may be reversed if improper criteria were applied or incorrect legal assumptions were made. [Citation.] Alternatively stated, if a trial court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, it cannot be said the court has properly exercised its discretion under the law. [Citations.] Therefore, a discretionary order based on the application of improper criteria or incorrect legal assumptions is *not* an exercise of *informed* discretion and is subject to reversal even though there may be substantial evidence to support that order. [Citations.] If the record affirmatively shows the trial court misunderstood the proper scope of its discretion, remand to the trial court is required to permit that court to exercise *informed* discretion with awareness of the full scope of its discretion and applicable law.' (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15–16.)" (*Barriga, supra*, 51 Cal.App.5th at p. 334.)


**Electronic Discovery**

Pricewaterhouse contends the trial court had discretion to award electronic discovery costs, which it did not exercise because the court mistakenly concluded such costs were

17

prohibited under California law.  On the record before us, Pricewaterhouse has rebutted the presumption that the trial court understood the scope of its discretion, and we must remand the issue for the trial court to either exercise, or confirm the prior exercise, of its discretion.

The trial court accurately summarized the holding of *Science Applications*.  In *Science Applications*, the trial court awarded several cost items related to the use of technology, including $200,000 for document control and a database for internal case management provided by a third-party vendor. (*Science Applications*, *supra*, 39 Cal.App.4th at p. 1099.)  The appellate court noted that the expenses were not expressly allowed or prohibited under section 1033.5, so were recoverable at the discretion of the trial court.  (*Science Applications,* at pp. 1103–1104.)  The appellate court found the charge for an internal case management database and document control in that case, however, was equivalent to hiring a third party to keep track of voluminous records in the case, such as numbering the documents, loading the documents for retrieval, maintaining a document library, and creating a searchable database.  The court found the expense was similar to hiring a "high tech" paralegal to organize documents and access them for discovery and at trial. (*Ibid*.)  Since the prevailing party was not entitled to attorney fees, the court found the cost for electronic document control equivalent to paralegal fees was not recoverable.  The court also expressed concern that the prevailing party had unwisely spent more than $2 million on high-tech litigation methods that resulted in recovery of $1 million in damages.  (*Id*. at p. 1105.)  "If a party litigant chooses unwisely to expend monies in trial presentation in excess of the value of the case, utilizing advanced

18

methods of information storage, retrieval and display, when more conventional if less impressive methods are available, the party must stand his own costs." (*Ibid*.)

The trial court in the instant case acknowledged the authorities cited by Pricewaterhouse that affirmed orders awarding electronic litigation costs, but noted the cases were not directly on point. In *El Dorado*, the appellate court found the trial court had discretion to award costs incurred to build a database in order to process certain data necessary to create an exhibit for trial. (*El Dorado*, *supra*, 150 Cal.App.4th at p. 617.) The *El Dorado* court distinguished the cost of processing raw financial data for an indispensable exhibit from the costs prohibited in *Science Applications* for a document library for the entire litigation. The *El Dorado* court added that if the cost of labor for creating an exhibit was recoverable under section 1033.5, the fact that it was the labor of a paralegal was not relevant.

The appellate court in *Bender*, *supra*, 217 Cal.App.4th at page 990, affirmed an award of costs for courtroom presentations in a case where attorney fees were also recoverable. The expense for courtroom presentations included creating excerpts from deposition transcripts and video, converting exhibits to computer formats, producing electronic presentations, and an aide to present videotaped deposition excerpts at trial. The *Bender* court rejected the argument in that case that the costs were nonrecoverable under *Science Applications*, noting that the *Science Applications* court had approved some technology costs awarded by the trial court and disapproved others. (*Bender,* at pp. 990–991.) The *Bender* court also noted that the use of

19

technology in the courtroom had become commonplace and the cost had declined dramatically.

On appeal, Pricewaterhouse contends the recent decision of *Hooked Media Group, Inc. v. Apple Inc.* (2020) 55 Cal.App.5th 323 (*Hooked Media*), which was issued after the order taxing costs in this case, clarified the trial court's discretion to award electronic discovery costs. In *Hooked Media*, the trial court awarded $92,000 for electronic discovery costs to convert "native electronic files into usable form." (*Id.* at p. 338.) The appellate court affirmed the cost award, finding that "Hooked makes valid arguments that the e-discovery costs may have been incurred more out of convenience than necessity. But given our deferential standard of review, reversal is not warranted. The trial court, having closely observed the litigation as it progressed over several years, was in a much better position than we are to decide whether expenses associated with managing electronic data were necessarily incurred." (*Id.* at pp. 338–339.)

Justice Mihara concurred, distinguishing the holding of *Science Applications* from the facts of *Hooked Media* as follows: "Here, unlike in *Science Applications*, the third-party vendor expenses incurred by Apple for data conversion of files into a 'usable form' so that those files could be produced to Hooked were not akin to paralegal or attorney expenses. The costs incurred for the technical process of converting data files into a usable form so that those files can be produced in response to document production requests was not addressed in *Science Applications*, and such costs are not addressed in Code of Civil Procedure section 1033.5. It follows that the superior court had discretion to allow or disallow these costs. Hooked makes no argument that

20

the court abused its discretion." (*Hooked Media, supra,* 55 Cal.App.5th at p. 354.)

We note all of the relevant case law has consistently acknowledged that the costs associated with electronic discovery are not expressly allowed or prohibited, but may be awarded in the trial court's discretion. Common sense dictates that a prevailing party who may not recover attorney fees or costs associated with the storage, management, photocopying, search, or production of physical documents, cannot recover equivalent labor or discovery costs simply because the documents are in electronic form. On the other hand, a prevailing party may show costs unique to the electronic format of the data were reasonably necessarily incurred and are not equivalent to work performed by paralegal or administrative support, such as the cost of a technical process to convert data files to a useable form to respond to a document production request.

In the current case, we begin with the presumption that the trial court understood the scope of its discretion and we resolve any ambiguities in favor of affirming the trial court's order. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631–632.) Pricewaterhouse contends, however, that the City's arguments and the trial court's statements demonstrate that the trial court did not understand the extent of its discretion. In the City's opening brief on its motion to tax costs, the City's sole argument for taxing electronic discovery costs was that the trial court lacked discretion to award any electronic discovery costs, because *Science Applications* precluded an award of electronic discovery costs as a matter of law. The City repeated this argument in its reply brief, although added that the costs being sought were not reasonable in amount. At the

21

hearing in the trial court, the City added, albeit briefly, that the electronic discovery costs at issue were not reasonably necessary.

The trial court accurately summarized the relevant case law concerning recovery of electronic discovery costs and acknowledged that there was no law applicable to the cost of electronic discovery that controlled the outcome in this case. The parties did not provide, and the trial court's own research had not found, directly controlling authority as to whether the specific type of electronic discovery costs incurred in this case were reasonably necessary for litigation. The trial court stated, however, that the electronic discovery costs at issue in this case were analogous to costs that were not recoverable in *Science Applications* as a matter of law. The court's comments suggest that it felt constrained by the holding of *Science Applications*, in which the appellate court had reversed an award of analogous costs as an abuse of discretion. The court noted that the Legislature had not amended the costs statute after *Science Applications,* and the appellate court had not addressed the issue of electronic discovery in the context of modern litigation. As a result, the court stated it was "stuck" with *Science Applications*, since no subsequent law had stated electronic discovery costs of the specific type incurred in this case were reasonably necessary for litigation. These comments imply that the trial court felt compelled to follow *Science Applications*. We conclude this record evidence is sufficient to rebut the presumption that the trial court understood the full extent of its discretion to award electronic discovery costs.

The trial court's ruling cannot be clearly deciphered from the transcription. The trial court stated that it was going to "exercise the discretion and high costs associated with electronic

discovery in this case" and grant the motion to strike costs related to electronic discovery. Standing alone, this phrase could be interpreted as an exercise of discretion. But in context, the court expressly stated its ruling was made in reliance on the holding of *Science Applications*, which suggests the trial court may have felt its "discretion" was constrained in a particular way. The court's ruling taxing the entire amount of electronic discovery costs does not provide further insight into whether the trial court believed its discretion was constrained: taxing all costs is consistent with a belief that such costs are never recoverable. While taxing all costs could also be consistent with an exercise of the court's discretion, the record before us does not suggest the parties expressly argued or the trial court discussed whether specific components of the electronic discovery costs were reasonably necessary to the litigation. Although it is a close question in this case, given the City's primary argument that the costs associated with electronic discovery are never recoverable under *Science Applications* and the lack of clarity in the transcript of the hearing, we cannot presume the trial court understood the extent of its discretion to award costs related to electronic discovery. We remand the matter to allow the trial court to either exercise its discretion to award electronic discovery costs or confirm the prior exercise of its discretion to deny electronic discovery costs.

**Travel Costs**

Pricewaterhouse contends the trial court abused its discretion by taxing the travel costs to depositions and hearings

for counsel based in New York.  No abuse of discretion has been shown.

Section 1033.5, subdivision (a)(3)(C), expressly allows a prevailing party to recover "[t]ravel expenses to attend depositions" as costs.  (§ 1033.5, subd. (a)(3)(C).)  Recoverable travel expenses are not limited to deposition travel by attorneys who practice in the court's jurisdiction.  (*Thon v. Thompson* (1994) 29 Cal.App.4th 1546, 1548.)

Whether a cost is reasonably necessary to the litigation, however, and whether a cost is reasonable in amount, is a determination within the trial court's discretion.  In this case, the trial court found that Pricewaterhouse's New York-based counsel had qualified, experienced attorneys available in the firm's Los Angeles office to conduct depositions and attend hearings, and who in fact took several of the depositions in this case.  Under the circumstances, the trial court found the travel costs for out-of-town attorneys were not reasonably necessary to the litigation and the court exercised its discretion to tax the travel costs of out-of-town attorneys.  We cannot say that the court's assessment was clearly wrong; no abuse of discretion has been shown.

## DISPOSITION

The portion of the order taxing costs associated with electronic discovery is reversed and remanded for further proceedings in accordance with this opinion, while the remaining

portion of the order taxing costs is affirmed. In the interests of justice, the parties are ordered to bear their own costs on appeal.


MOOR, J.


We concur:


RUBIN, P. J.


GRIMES, J.*

_____

* Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.